708 F.2d 96
 Archie W. AITCHISON, Appellant,
v.
Louis RAFFIANI, individually and in his capacity as Mayor of
the Borough of Fair Lawn; Florence Dobrow, individually and
in her capacity as Deputy Mayor and Councilwoman of the
Borough of Fair Lawn; Bernard Hersh, individually and as
Councilman of the Borough of Fair Lawn; Irving Bienstock,
individually and as Councilman of the Borough of Fair Lawn;
Henry Shapiro, individually and as Councilman of the Borough
of Fair Lawn; Frank Peruggi, individually and in his
capacity as Manager of the Borough of Fair Lawn; Jack
Ballan, individually and in his capacity as Borough Attorney
of the Borough of Fair Lawn; and the Borough of Fair Lawn,
a municipal corporation of the State of New Jersey, Appellees.
Florence DOBROW and Borough of Fair Lawn, Third-party Plaintiffs,
v.
FIREMAN'S FUND INSURANCE COMPANIES (AMERICAN INSURANCE
COMPANY), Third-party Defendant.
Louis RAFFIANI, individually and as Mayor of the Borough of
Fair Lawn; Bernard Hersh, individually and as Councilman of
the Borough of Fair Lawn; Irving Bienstock, individually
and as Councilman of the Borough of Fair Lawn; Henry
Shapiro, individually and as Councilman of the Borough of
Fair Lawn; and Frank Peruggi, individually and as Borough
Manager of the Borough of Fair Lawn; and Jack Ballan,
individually, Third-party Plaintiffs
v.
FIREMAN'S FUND INSURANCE COMPANIES (AMERICAN INSURANCE
COMPANY), Third-party Defendant.
 No. 82-5380.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
 March 1, 1983.
Decided May 13, 1983.
 
 Robert F. Gallo, Douglas C. Willer, Oakland, N.J., for appellant.
 Jerome M. Lane, Hackensack, N.J., for All appellees except Jack Ballan.
 Donald R. Conway, Hackensack, N.J., for Florence Dobrow.
 Jack Ballan, pro se.
 Before HUNTER, WEIS and BECKER, Circuit Judge.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In this suit for damages under the Civil Rights Act of 1871, 42 U.S.C. Secs. 1983 and 1985(3), we hold that the members of a borough council, the mayor, and the borough attorney are entitled to absolute immunity for acts done in a legislative capacity. We also conclude that in a suit of this nature brought against a municipality and its office holders in their official capacities, the appropriate statute of limitations is that provided by state law for actions against governmental entities. Finding ourselves in agreement with the district court, we affirm.
 
 
 2
 The plaintiff's complaint asserted a claim for damages for wrongful discharge from his position as an employee of the Borough of Fair Lawn, New Jersey. Named as defendants were the mayor, members of the borough council, the borough attorney, the borough manager, and the municipality itself. The district court dismissed the case, holding that the individuals were immune and that the claim against the borough and the defendants in their official capacities was barred by the statute of limitations.
 
 
 3
 Plaintiff Archie Aitchison was appointed to the position of assistant building inspector for Fair Lawn in 1974. In September 1977, alleging aims of efficiency and economy, the mayor and council introduced an ordinance, effective October 30, 1977, that abolished the position of assistant building inspector. Plaintiff was informed of the borough's action in early September, and on September 27, 1977 the ordinance was passed on a second and final reading. That same day, Aitchison filed a request for a hearing with the Civil Service Commission. Plaintiff contended that his removal was politically motivated and in bad faith, serving as a subterfuge to avoid the civil service hearing process. A few weeks later, plaintiff also filed suit in the New Jersey Superior Court asking that the ordinance be declared unconstitutional.
 
 
 4
 The Civil Service Commission conducted a hearing and in October 1978 issued an order that plaintiff be reinstated to his position with back pay. The Commission found that the action of the borough was not in good faith and was an attempt to circumvent the state's civil service statute. In addition to back pay, the Commission allowed counsel fees in an amount equal to that plaintiff had earned in mitigation during the illegal layoff. The Commission's decision was affirmed by the superior court and the state supreme court denied certification.
 
 
 5
 On November 19, 1979, plaintiff filed his complaint in the federal district court seeking compensatory as well as punitive damages, and counsel fees. In the first of a series of rulings, the court determined that the individual defendants were entitled to absolute immunity as participants in the legislative process. The court reached this conclusion on the grounds that the members of council and the mayor had voted for the ordinance, and the borough attorney had advised the council with respect to the ordinance. With this ruling the court also dismissed the borough manager.
 
 
 6
 The claims against the borough and defendants in their official capacities were found to be governed by the two year statute of limitations in the New Jersey Tort Claims Act, N.J.Stat.Ann. Sec. 59:8-8 (West 1982). After a hearing, the court determined that plaintiff was not entitled to tolling of the statute because of fraudulent concealment by defendants, or because plaintiff did not "discover" the existence of his action until he uncovered certain documentary evidence. Since the complaint had been filed more than two years after the cause of action accrued, the court dismissed the complaint as against the borough and its officials. When all of the plaintiff's claims had finally been resolved through this series of orders, the court ordered dismissal of the entire case.[1]
 
 I. LEGISLATIVE IMMUNITY
 
 7
 Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), held that members of a state legislature have absolute immunity from suits for damages under sections 1983 and 1985(3). The Supreme Court reviewed the common law tradition of legislative freedom from damage suits arising out of official action and concluded that Congress did not intend to limit this immunity by its enactment of the civil rights statutes. The Court also observed that "[l]egislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence, but for the public good." Id. at 377, 71 S.Ct. at 788. It matters not that the legislators acted in bad faith. "The claim of an unworthy purpose does not destroy the privilege." Id.
 
 
 8
 In Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1971), this doctrine of absolute immunity was held to include appointed regional members acting in a legislative capacity for an agency created by a compact between two states. The Court concluded that the Tenney rationale was "equally applicable to federal, state and regional legislators," id. at 405, 99 S.Ct. at 1179, but the Court expressly left open the issue of absolute immunity for "individuals performing legislative functions at the purely local level," id. at 404 n. 26, 99 S.Ct. at 1178 n. 26.
 
 
 9
 Since Lake Country, however, six courts of appeals have held that members of local municipal councils or similar bodies are entitled to absolute immunity when acting in a legislative capacity. See Reed v. Village of Shorewood, 704 F.2d 943 (7th Cir.1983); Espanola Way Corp. v. Meyerson, 690 F.2d 827 (11th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); Kuznich v. County of Santa Clara, 689 F.2d 1345 (9th Cir.1982); Hernandez v. City of Lafayette, 643 F.2d 1188 (5th Cir.1981), cert. denied, 445 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); Bruce v. Riddle, 631 F.2d 272 (4th Cir.1980); Gorman Towers v. Bogoslavsky, 626 F.2d 607 (8th Cir.1980). No appellate decision after Lake Country has held otherwise.
 
 
 10
 In extending immunity to municipal legislators, the court of appeals in Gorman Towers could "perceive no material distinction between the need for insulated decisionmaking at the state or regional level and a corresponding need at the municipal level." 626 F.2d at 612. Indeed, the opinion noted that because municipal legislators are closer to their constituents they are more vulnerable to litigation and its inhibiting effect. Id. Moreover, when municipal officials are elected, rather than appointed as in Lake Country, the argument for immunity becomes stronger. The electoral process itself acts as a powerful restraint on improper legislative action. Id.; see also, Lake Country, 440 U.S. at 409, 99 S.Ct. at 1181 (Blackmun, J., dissenting).
 
 
 11
 We find Gorman Towers and the opinions of the other courts of appeals persuasive. Recognizing the strong authority of Lake Country, we hold that members of a municipal council acting in a legislative capacity are absolutely immune from damage suits under section 1983. For the same reasons, we find those acting in a legislative capacity are immune from suit under section 1985(3) as well.[2] See Tenney v. Brandhove, supra; City of Safety Harbor v. Birchfield, 529 F.2d 1251, 1256-57 (5th Cir.1976).
 
 
 12
 The question then arises as to whether the mayor and the borough attorney are entitled to share in this legislative immunity. We conclude that they are, to the extent their activities are legislative in character.
 
 
 13
 In appraising the mayor's need for absolute immunity, we look to the function the individual performs rather than his location within a particular branch of government. For example, Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), held that an administrative law judge was to be given judicial immunity even though employed by the executive department, and Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), accorded legislative immunity to justices of the Virginia Supreme Court in connection with their promulgation of disciplinary rules for the bar.
 
 
 14
 A mayor, although generally the executive officer of a municipality, may also have legislative functions. Cf. Buckley v. Valeo, 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976) and Edwards v. United States, 286 U.S. 482, 491, 52 S.Ct. 627, 630, 76 L.Ed. 1239 (1932) (the President acts legislatively in approving or vetoing bills passed by Congress). In Hernandez v. City of Lafayette, 643 F.2d at 1193-94, the court of appeals held that a mayor's veto was as much a part of the legislative process as the vote of a councilman and, therefore, the mayor was granted absolute immunity in connection with his veto of an ordinance.
 
 
 15
 In the case at hand, the plaintiff's complaint alleges that the mayor "voted to pass an ordinance to abolish" the position of assistant building inspector. Thus, the complaint establishes active participation by the mayor in the legislative process and, consequently, for that act, the mayor is entitled to absolute immunity.
 
 
 16
 The position of the borough attorney is somewhat different. The complaint alleges that he advised the council on the form of legislation it should use. Thus, although not a lawmaker himself, the borough attorney was acting as a legal aide in the course of legislative drafting.
 
 
 17
 In Green v. DeCamp, 612 F.2d 368 (8th Cir.1980), the court extended legislative immunity to counsel for a state senate investigative committee, concluding that as a legislative aide he had the same protection as the senators. The court relied on Gravel v. United States, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), and Eastland v. United States Servicemens Fund, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), decisions that held that the Speech or Debate Clause of the Constitution sheltered legislative aides as well as Members of Congress. "[F]or the purpose of construing the privilege, a Member and his aide are to be treated as one.... [Aides] must be treated as the [Members'] alter egos and ... if they are not so recognized, the central role of the Speech or Debate Clause ... will inevitably be diminished and frustrated." Gravel, 408 U.S. at 616-617, 92 S.Ct. at 2622-2623. The common law immunity enjoyed by legislators from suits under section 1983 is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause. Supreme Court of Virginia, 446 U.S. at 732, 100 S.Ct. at 1974.
 
 
 18
 These cases support the district court's conclusion that because the borough attorney was acting in direct assistance of legislative activity he was entitled to absolute immunity. We find no error in that ruling.[3] Accordingly, the defendants in their individual capacity were properly accorded absolute immunity by the district court for their legislative acts.
 
 II. THE STATUTE OF LIMITATIONS
 
 19
 Since liability against the municipality is not precluded simply because the defendants were found immune in their individual capacities, see Reed v. Village of Shorewood, 704 F.2d 943 at 953 (7th Cir.1983), we next examine the court's rulings as to the municipality.
 
 
 20
 The individuals were also sued in their official capacities, together with the Borough of Fair Lawn itself. Because any judgment against them in their official capacities would be payable by the borough, the district court determined that the officials and the municipality should be treated as a single entity so that the same legal standards as to the statute of limitations apply to all.
 
 
 21
 That ruling was not erroneous. To hold otherwise would mean that when the limitations period applicable to the borough was shorter than the general limitations period, that specific period could be circumvented simply by suing individuals in their official capacity. See Hughes v. Blankenship, 672 F.2d 403, 406 (4th Cir.1982) (civil rights suit against defendant in his official capacity simply another way of pleading action against municipality, and damages awarded only if recoverable against the governmental entity itself); Familias Unidas v. Briscoe, 619 F.2d 391, 403-405 (5th Cir.1980).
 
 
 22
 After the individual defendants in this case were dismissed, the borough moved for dismissal because the plaintiff could not recover punitive damages against it, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) and because the action was barred by the general two-year statute of limitations, N.J.Stat.Ann. Sec. 2A:14-2. The court concluded that although plaintiff could not recover punitive damages, he might be entitled to a compensatory award, Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), as well as attorney's fees for the appeal to the Civil Service Commission.[4] As to the statute of limitations issue, the court determined that the two-year period set out in the New Jersey Tort Claims Act, N.J.Stat.Ann. Sec. 59:8-8, was the most appropriate. The court then conducted a hearing to determine if that period had been tolled by concealment on the part of defendants or lack of knowledge on the part of plaintiff. The court decided that the limitations period should not be extended.
 
 
 23
 The court found that the plaintiff's vigorous pursuit of his rights in state proceedings belied a claim that the defendants' concealment or the plaintiff's lack of knowledge caused the delay in bringing the federal claim. That factual finding may be overturned by us only if clearly erroneous. See Swietlowich v. County of Bucks, 610 F.2d 1157 (3d Cir.1979); Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Plaintiff has not met that burden; indeed, the record is such that it is difficult to imagine how the trial court could have come to any other conclusion. We see no need to pursue that phase of the case any further.[5]
 
 
 24
 Aitchison also argues, however, that the court erred in applying the two-year limitations period of the New Jersey Tort Claims Act. Determining the appropriate limitations period in a civil rights case is not always a simple matter. Congress has not enacted an applicable statute and so we borrow "the state law of limitations governing an analogous cause of action." Board of Regents of the University of the State of New York v. Tomanio, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794-1795, 64 L.Ed.2d 440 (1980). In Polite v. Diehl, 507 F.2d 119, 122 (3d Cir.1974) (en banc), we said, that as a matter of federal law, the appropriate period "to be applied is that which would be applicable in the courts of the state in which the federal court is sitting had an action seeking similar relief been brought under state law."
 
 
 25
 The essential nature of the federal claim, including the relief sought and the type of injury alleged should be examined "within the scheme created by the various state statutes of limitations." Davis v. United States Steel Supply, 581 F.2d 335, 337 (3d Cir.1978); see also Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 900 (3d Cir.1977). In selecting the appropriate limitations period, moreover, we may not adopt one which is inconsistent with the federal policy underlying the Civil Rights Act. Knoll v. Springfield Township School District, 699 F.2d 137, 142 (3d Cir.1983).
 
 
 26
 We first examine state law to determine how a claim similar to the one plaintiff brought here would be treated in a state court.
 
 
 27
 Plaintiff argues that the applicable statute is N.J.Stat.Ann. Sec. 2A:14-1 which allows six years for suits alleging "tortious injury to ... personal property, ... to the rights of another ... or for recovery upon a contractual claim or liability, expressed or implied...." The borough, on the other hand, suggested in the district court the application of the two-year period of N.J.Stat.Ann. Sec. 2A:14-2 for "an injury to the person caused by the wrongful act, neglect or default of any person."
 
 
 28
 The court, however, determined that the specific limitations period of the New Jersey Tort Claims Act, N.J.Stat.Ann. Sec. 59:8-8, was controlling.[6] Section 59:8-8 provides that "a claimant shall be forever barred from recovering against a public entity if ... [t]wo years have elapsed since the accrual of the claim."
 
 
 29
 There is a dearth of appellate authority on the interpretation of the applicable New Jersey law but there is one decision which bears a close resemblance to the case at hand. In Martin v. Township of Rochelle Park, 144 N.J.Super. 216, 365 A.2d 197 (App.Div.1976), the operator of a diner alleged that she had suffered damages when the Township intentionally and maliciously repealed an ordinance. The superior court held that "the nature of this action is one for the recovery of damages against the municipality as a consequence of the misconduct of its officials. Consequently, the provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., are clearly applicable and not those of the general limitations statute, N.J.S.A. 2A:14-1 et seq." Id. at 219, 365 A.2d at 199. A trial court reached the same conclusion in a sex discrimination case alleging violations arising under the United States and the New Jersey Constitutions. Lloyd v. Borough of Stone Harbor, 179 N.J.Super. 496, 513-14, 432 A.2d 572, 581 (Ch.Div.1981).
 
 
 30
 Although the state supreme court has not yet spoken on the issue, the Martin and Lloyd cases present a reasonable interpretation of the Tort Claims Act which we accept as representing New Jersey law. On that basis, it is clear that had the case at hand been brought in the state court under state law, the two-year statute of limitations would apply.
 
 
 31
 Whether that same limitations period should be used in a section 1983 case against a New Jersey municipality has divided the judges of the federal district court in that state. In Gipson v. Township of Bass River, 82 F.R.D. 122 (D.N.J.1979), the plaintiff alleged discriminatory conduct on the part of zoning board officials. The district judge, citing Martin, applied the two-year statute of limitations contained in the Tort Claims Act. See also Peltack v. Borough of Manville, 547 F.Supp. 770, 772 (D.N.J.1982) (citing Gipson and Lloyd ).
 
 
 32
 Erdmann v. Board of Education of Union County Regional High School District No. 1, 541 F.Supp. 388 (D.N.J.1982), an employment discrimination case, and Peters v. Township of Hopewell, 534 F.Supp. 1324 (D.N.J.1982), a claim for wrongful taking of property, both declined to follow Gipson or apply the limitations period of section 59:8-8. The district judges in these two cases believed that this court, in determining the applicable state period, looked only to the nature of the challenged conduct, and not to the type of entity being sued.[7]
 
 
 33
 As mentioned earlier, the Supreme Court said in Tomanio that when the federal courts "borrow" a state statute of limitations, they should ordinarily use "the most appropriate one provided by state law." 446 U.S. at 485, 100 S.Ct. at 1795. The Court also noted that 42 U.S.C. Sec. 1988 requires reference to state law when there is no federal rule of decision, and characterized state statutes as "more than a technical obstacle to be circumvented if possible. In most cases they are binding rules of law." 446 U.S. at 484, 100 S.Ct. at 1795.
 
 
 34
 Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), listed an exception to the general rule. After explaining that there is nothing "peculiar to a federal civil rights action that would justify special reluctance in applying state law," id. at 464, 95 S.Ct. at 1722, the Court nevertheless went on to say that "considerations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration," id. at 465, 95 S.Ct. at 1722.
 
 
 35
 In Knoll v. Springfield Township School District, 699 F.2d 137 (3d Cir.1983), this court held that application of the Pennsylvania six-month statute of limitations governing suits against governmental officials would be inconsistent with the policies and legislative history underlying the civil rights acts. We reasoned that "[s]uch a short statute of limitations is not 'sufficiently generous in [its] time period to preserve the remedial spirit of federal civil rights actions.' " 699 F.2d at 142. (citations omitted). In addition, the court noted that a suit against private individuals would be governed by a longer limitations period than that applicable to public officials. We concluded that "to constrict the [federal] right by imposing a six-month limitations statute where there are public defendants would, in our view, run completely counter to the intent of the 1871 Congress." Id. at 144.
 
 
 36
 In short, Knoll held that the six-month period was inadequate for the average plaintiff to recognize the constitutional deprivation, consult a lawyer, and prepare a case for filing. Id. at 142. Although the opinion discusses the "anomalous result that can stem from applying different statutes of limitations to suits involving private and public defendants," id. at 144, and implies that application of a shorter statute to municipal defendants may be inappropriate, that variance is not the basis of the holding. Rather, Knoll is bottomed on the inadequacy of the six-month period and the court's decision would have been the same if the identical limitation applied to private defendants as well.
 
 
 37
 Bearing in mind the Supreme Court's admonition in Tomanio that we consider state statutes that are borrowed for limitations purposes as "binding rules of law," we conclude that different statutes of limitations for actions against public and private entities must be respected if the periods are otherwise proper. The issue in this case therefore is whether a two-year statute is consistent with the federal policy underlying civil rights legislation.
 
 
 38
 In Tomanio, the Court stated that a state's limitations period is not inconsistent with federal law "merely because the statute causes the plaintiff to lose the litigation." 446 U.S. at 488, 100 S.Ct. at 1797 (quoting Robertson v. Wegmann, 436 U.S. 584, 593, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554 (1978)). The Court also identified as a principal consideration whether the state period allows plaintiffs to "readily enforce their claims, thereby recovering compensation and fostering deterrence." Id. See Robertson v. Wegmann, 436 U.S. at 590-91, 98 S.Ct. at 1995. The period in Tomanio was three years in length, but the court upheld a one-year period in Johnson v. Railway Express Agency, Inc., a suit challenging racial discrimination in employment. It follows, therefore, that the two-year statute in this case passes muster. That period was surely adequate to permit a suit to be brought.
 
 
 39
 It is not unreasonable for a state to assume that the public interest in the repose of claims against a governmental agency is worthy of special consideration. Also, the problem of preserving evidence may be more difficult when the defendant is an elected body whose members serve for relatively short terms.
 
 
 40
 Other courts of appeals have approved statutes of limitations that differentiate between private individuals and governmental bodies. See Kosikowski v. Bourne, 659 F.2d 105 (9th Cir.1981); Green v. Ten Eyck, 572 F.2d 1233 (8th Cir.1978), and we find ourselves in agreement. We do not find the limitations period here inconsistent with federal civil rights policy. Cf. Robertson v. Wegmann, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (Louisiana survivorship rule not inconsistent with federal civil rights policy or unreasonable even though state law allows close relatives but not personal representative to be substituted as plaintiff in actions other than those for damage to property). We conclude, therefore, that the district court properly invoked the two-year statute of limitations under the New Jersey Tort Claims Act.
 
 
 41
 Finding no error, we will affirm the judgment of the district court in all respects.
 
 
 
 [1]
 The final order dismissing the complaint was filed on May 18, 1982. The notice of appeal, which was filed on June 17, 1982, was therefore timely. The previous orders of the court did not resolve all of the matters in the case and the district court's action did not become final until all parties were formally dismissed. The defendants' motions to dismiss the appeal as untimely will accordingly be denied
 
 
 [2]
 Plaintiff has not specified under which particular provision of Sec. 1985 his claim lies. However, since plaintiff makes no suggestion of interference with either the institutions and processes of the federal government, or the administration of justice of state courts, we can only read the complaint as alleging violations of Sec. 1985(3). See Kush v. Rutledge, --- U.S. ----, ----, 103 S.Ct. 1483, 1486, 75 L.Ed.2d 413 (1983) (parsing Sec. 1985)
 
 
 [3]
 Plaintiff has not challenged the district court's order with respect to the borough manager and, accordingly, we do not discuss that point
 
 
 [4]
 We have since noted that a plaintiff is "entitled to attorney's fees under section 1988 not because he prevailed on his ... claim in an administrative proceeding, but because he was deemed to have prevailed in his lawsuit due to its impact on the administrative proceeding
 [A] plaintiff who has not filed a civil complaint on the merits of a claim under one of the civil rights statutes ... is not entitled to attorney's fees under section 1988, even though he may have obtained substantial relief in an administrative proceeding." Latino Project, Inc. v. City of Camden, 701 F.2d 262 at 265 (3d Cir.1983).
 
 
 [5]
 Although styled as a motion for dismissal pursuant to Fed.R.Civ.P. 12 and 56, the court and the parties treated the proceedings on the tolling issue as a trial on that factual matter. Witnesses were presented under oath and cross-examined; objections were made and ruled upon. Since the parties have not contested this form of proceedings, and have apparently consented to it, we will regard the hearing below as constituting a final determination after trial rather than a disposition on summary judgment. See Carter v. Hewitt, 617 F.2d 961, 965 n. 3 (3d Cir.1980); Nielsen v. Western Electric Co., 603 F.2d 741 (8th Cir.1979)
 
 
 [6]
 The trial court's letter opinion of July 8, 1981 concludes "that the specific limitation provided in N.J.S.A. 59:8-8 controls over the more general provisions of N.J.S.A. 2A:14-1 or 14-2 and thus is more appropriate." However, the letter opinion of November 12, 1981, which addresses the tolling issue, states that "the provisions of N.J.S.A. 2A:4-2 were indeed applicable to this case." In view of the trial court's more specific ruling of July 8, we conclude that the court misspoke in its November opinion and that the July decision reflects the true ruling
 
 
 [7]
 In McNeil v. McDonough, 515 F.Supp. 113 (D.N.J.1980), aff'd per curiam, 648 F.2d 178 (3d Cir.1981), an employment discrimination case, the district court without discussing the Tort Claims Act applied the six-year limitation period of Sec. 2A:14-1. Our opinion affirming the trial court's finding of no liability did not address the statute of limitations issue and, therefore, does not constitute precedent on that point. Moreover, since the defendant had prevailed on the merits, the statute of limitations ruling was not relevant to our disposition of the appeal