Debra A. AGRESTA, Individually and as Administratrix of the Estate of Samuel J. Agresta, Deceased, and as Parent and Natural Guardian of Samuel J. Agresta, Jr., and Anthony R. Agresta

v.

W. Wilson GOODE, et al.

Civ. No. 91–6396.

United States District Court, E.D. Pennsylvania.

June 15, 1992.

---

Alan B. Epstein, for plaintiffs.

Jack Herzig, Asst. City Sol., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This is an action under 42 U.S.C. sections 1983, 1985, and 1986, in which plaintiff alleges that various individuals[1] in the government of the City of Philadelphia conspired to deprive her of her constitutional rights. In particular, she alleges that defendants conspired to enact an unconstitu-

tional bill to deprive her, retroactively, of a remedy in a pending case brought in state court against the city. Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, this motion will be granted in part and denied in part.

### I. Facts

This action arises out of events that occurred during the pendency of an action brought by plaintiff in the Common Pleas Court of Philadelphia County against the City of Philadelphia and individual police officers. In that action, plaintiff sought to recover damages for the wrongful death of her husband, Samuel J. Agresta, at the hands of the individual police officer defendants.

In reviewing a motion to dismiss under Rule 12(b)(6), the well-pleaded allegations of the complaint are to be taken as true and viewed in a light most favorable to the non-moving party, and all reasonable inferences that can be drawn from the facts are to be drawn in favor of the non-moving party. *See Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987); *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985). In accordance with that standard, the following factual account is drawn from the complaint.

After two years of discovery and investigation of plaintiff's complaint in the Court of Common Pleas, then-Chief Deputy City Solicitor Ralph J. Teti recommended that the action should be settled. The City, however, rejected Teti's advice. Thereafter, Teti withdrew from the case and was replaced by defendant David A. Soltz, who at the time was Deputy City Solicitor. Together with defendant Charisse Lillie, who at the time was City Solicitor, Soltz engaged in a series of delaying maneuvers,

---

**1.** The complaint names as defendants Charisse Lillie, individually and in her official capacity as City Solicitor, and David A. Soltz individually and in his official capacity as Deputy City Solicitor. The complaint also names the following individuals in their official capacities only: Mayor W. Wilson Goode, Councilwoman Ann J. Land, Councilwoman Augusta A. Clark, Councilman David Cohen, Councilman W. Thatcher Longstreth, Councilman Angel L. Ortiz, Councilman Francis Rafferty, Councilwoman Anna C. Verna, Councilman John F. Street, Councilwoman Joan L. Krajewski, Councilman Jack Kelly, Councilman Joseph E. Coleman, Councilwoman Marian P. Tasco, and Councilman Brian J. O'Neill. Additional defendants are the City of Philadelphia and the Philadelphia City Council.

including avoidance of discovery and disobedience of court orders, in order to avoid a decision on the merits.[2]

In an effort to deprive plaintiff of a remedy, defendants Lillie and Soltz drafted legislation to repeal the City's waiver of governmental immunity in cases involving negligent or unlawful conduct of police officers acting within the scope of their duties. Introduced into the Philadelphia City Council by defendant Councilwoman Ann J. Land on September 19, 1990, as Bill 1057, the proposed legislation included a retroactivity provision that would apply to all litigation pending at the time of the bill's passage, as well as all litigation commenced thereafter. Defendants knew or should have known, according to plaintiff, that the retroactivity provision violated the state and federal constitutions under the Pennsylvania Supreme Court's decision in *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980).

Following the introduction of Bill 1057, Soltz, knowing his statements to be false, advised the Common Pleas Court and plaintiff's counsel that the bill, if passed, would not have retroactive effect. As the bill moved through the City Council, however, the trial on plaintiff's claims, set for October 22, 1990, was fast approaching. To forestall the trial, Soltz moved for a continuance, representing to the court that another member of the Common Pleas Court was about to enter a moratorium on all litigation against the City of Philadelphia. Soltz knew or had reason to know that this representation was false. Soltz further agreed to stipulate with plaintiff's counsel that Bill 1057 would not apply to plaintiff's case if plaintiff agreed to the continuance. In reliance on Soltz's representation, the court granted the request for a continuance. Soltz thereafter refused to sign the stipulation with plaintiff's counsel. No moratorium was ever entered on litigation against the city.

On November 29, 1990, the City Council passed Bill 1057 without having given notice of public hearings as required by the

Home Rule Charter, § 2.2–201(5). Mayor W. Wilson Goode signed the bill into law on December 4. Two days later, Lillie and Soltz filed a motion for summary judgment in plaintiff's case, claiming that the action was barred by the retroactivity provision of Bill 1057.

On March 18, 1991, the Common Pleas Court issued an opinion denying the motion for summary judgment. The court declined to address plaintiff's argument that the retroactivity provisions of Bill 1057 were unconstitutional, and instead concluded that, on the basis of the conduct set forth above, defendants were estopped from asserting the application of Bill 1057 to plaintiff's case. *See Agresta v. Gillespie*, 22 Phila. 178 (1991). The court certified its order for appeal, but the Commonwealth Court declined to exercise appellate jurisdiction over the interlocutory order. *See City of Philadelphia v. Agresta*, 139 Pa.Cmwlth. 7, 590 A.2d 1314 (1991). Plaintiff's case then proceeded to trial. On April 22, 1991, a jury returned a verdict in favor of plaintiff in the amount of $4,800,-000, and the court entered judgment in that amount. Appeal of that judgment is pending in state court. One of the bases for the appeal is defendants' contention that plaintiff's recovery was barred by Bill 1057.

## II. Legal Analysis

The basis of plaintiff's claim is that defendants' actions violated her due process rights under the Fourteenth Amendment and her right to petition the government for redress of grievances under the First Amendment. She alleges that, while defendants' alleged attempt to deprive her of a state law remedy for the wrongful death of her husband ultimately failed, she nevertheless suffered harm at defendants' hands through the delay in receiving her day in court and the resulting added expense, complexity, and uncertainty of her case in state court. The right of access to the courts, which plaintiff alleges was violated by defendants' conduct, is a part of the First Amendment right to petition the government. *See California Motor*

---

**2.** The course of Soltz's conduct is set forth at length in an opinion of the Common Pleas

Court. *See Agresta v. Gillespie*, 22 Phila. 178 (1991).

*Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972).

Defendants propose four separate grounds on which, in their view, they are entitled to dismissal of plaintiffs' complaint. These will be discussed in turn.

#### 1. *Jurisdiction*

■ First, defendants contend that plaintiff lacks standing to bring an action in this court because plaintiff has failed to demonstrate the existence of an actionable case or controversy. In defendants' view, plaintiff has been fully compensated for any wrongs that she may have suffered at the hands of the city and its representatives by the jury verdict and judgment that she obtained in state court. Further, defendants argue, to the extent that the state court judgment may be reversed in posttrial motions or on appeal, any resulting injury to plaintiff has not yet materialized.

These arguments are unavailing. Plaintiff recovered in state court, not for any harm suffered by her as a result of the allegedly unconstitutional passage of Bill 1057, but for the wrongful death of plaintiff's decedent at the hands of the Philadelphia Police. Although the state court was required to address the applicability of Bill 1057 to the case before it, the harm to plaintiff's constitutional rights that she alleges here was not at issue in the state court action. Moreover, while the full consequences of that alleged injury may not yet be apparent, plaintiff has sufficiently alleged an injury to her constitutional rights by claiming that defendants, acting under color of state law, delayed and otherwise jeopardized her access to the state court. *See Ryland v. Shapiro*, 708 F.2d 967, 971–74 (5th Cir.1983); *Crews v. Petrosky*, 509 F.Supp. 1199, 1204 (W.D.Pa.1981). Plaintiff therefore has standing to bring the present action.

#### 2. *Abstention*

■ Defendants contend that, even if plaintiff has standing, this court should refrain from hearing her claim under the various forms of abstention recognized by the Supreme Court. Where a case clearly falls within the subject matter jurisdiction of a federal court, that court may, in very limited circumstances, decline to exercise that jurisdiction. Defendants claim that abstention is proper in the present case under two separate doctrines.

#### a. *Pullman* abstention

In *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court held that a federal court may abstain from deciding a federal constitutional claim before it when the constitutional issue may be rendered moot by a state court interpretation of a difficult and unsettled question of state law. Defendants note that in the present case, the state court resolved the applicability of Bill 1057 to plaintiff's state court claim through the equitable principles of estoppel, and thus avoided the necessity of addressing the constitutionality of the bill. They also assert that the validity of retroactive application of Bill 1057 is currently before the Pennsylvania Supreme Court, and therefore that a state court interpretation of the relevant state law is imminent.

These arguments ignore the fact that the relief plaintiff seeks here is for acts distinct from those on which she sued in state court. While the state court ultimately determined that defendants were estopped from arguing that Bill 1057 applied to plaintiff's case, plaintiff nevertheless may have suffered harm to her First Amendment right to access to the courts. That harm was not addressed by the state trial court, nor will it be by the state appellate court now considering plaintiff's case. Moreover, if the state appellate court determines that the district court erred by applying the principles of estoppel, the state courts will be directly confronted with the question of whether the retroactive application of Bill 1057 is constitutional.[3] Under the *Pullman* doctrine, a federal court is not required to defer to a pending state

---

**3.** Defendants do not suggest that Bill 1057 is susceptible to a narrow construction that would obviate the need to address the constitutional question.

court determination of whether the state law violates the federal constitution. *See Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 236–37, 104 S.Ct. 2321, 2326–27, 81 L.Ed.2d 186 (1984).[4] Abstention under *Pullman* therefore is not appropriate in the present case.

### b. *Colorado River* abstention

Under *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), a federal court may, under special circumstances, decline to entertain a case over which it has unquestioned jurisdiction for reasons of "wise judicial administration," primary among which is the benefit of avoiding duplicative litigation. *Id.* at 817, 96 S.Ct. at 1246. Abstention under *Colorado River* is not to be granted lightly. Despite the value of conserving scarce judicial resources and of promoting the comprehensive resolution of disputes within the framework of a single piece of litigation, the strength of the federal court's obligation to exercise the jurisdiction conferred upon it, combined with the absence of constitutional or strong federalism concerns, makes abstention for the avoidance of duplicative litigation appropriate only under exceptional circumstances. *See id.* at 817–18, 96 S.Ct. at 1246–47.

■ The Supreme Court has identified six factors for the district court to consider in deciding whether a stay is appropriate: (1) whether one court has first obtained jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the state and federal courts obtained jurisdiction; (5) the source of law that will provide the rules of decision; and (6) the adequacy of the state court proceedings to protect the parties' rights. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15–16, 25–26, 103 S.Ct. 927, 936–37, 941–42, 74 L.Ed.2d 765 (1983); *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246.

Defendants do not argue that jurisdiction over property is involved in the present case, nor do they argue that the federal forum is inconvenient. They do, however, contend that the remaining four factors all weigh in favor of abstention. Their argument, once again, misapprehends the nature of plaintiff's claim. The claims presented here are federal constitutional claims, not state tort law claims, and this court acquired jurisdiction over those claims before the state court did.[5] While plaintiff clearly could raise these claims in state court, she should not be bound to do so merely because they arise out of events that occurred during state court proceedings. Defendants have failed to make a showing that the extraordinary relief of *Colorado River* abstention is appropriate in this case.[6]

---

4. Likewise, the possibility that the state court might rely on the Pennsylvania Constitution, rather than on the United States Constitution, to determine the validity of Bill 1057's retroactivity provisions is irrelevant. The analysis of *ex post facto* legislation is essentially identical under Article I, Section 11 of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution. *See Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80, 83 (1980). Abstention is not required for interpretation of state constitutional provisions that parallel those of the federal constitution. *See Midkiff,* 467 U.S. at 237 n. 4, 104 S.Ct. at 2327 n. 4.

5. Indeed, while there is a factual overlap between the issues raised here and those on which the state court relied in its estoppel analysis, plaintiff has not raised the claims presented here in state court.

6. Defendants separately argue that abstention is appropriate under "principles of judicial econo-

my." They cite to *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), wherein the Supreme Court stated:

Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

One may question whether *Brillhart,* decided in the 1940s, provides a form of abstention separate from that set forth in substantially greater detail in *Colorado River* in 1976. Even if *Brillhart* does describe a separate form of abstention, however, the passage cited by defendants is inapposite. Plaintiff does not merely seek a declaration that Bill 1057 is unconstitutional; rather, she seeks affirmative relief, under section 1983, for harms that she allegedly suffered

### 3. Immunity

#### a. Mayor Goode and the members of the City Council

■ Mayor Goode and the individual members of the Philadelphia City Council claim that they are absolutely immune from suits for damages arising out of actions undertaken in a legislative capacity. *See Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951); *Aitchison v. Raffiani*, 708 F.2d 96, 99 (3d Cir.1983). Absolute immunity, however, applies only to actions brought against defendants in their individual capacities. *See Aitchison*, 708 F.2d at 100. Legislators are entitled to absolute immunity for fear that, if they know they may be individually liable for their actions, they will be hesitant in discharging their duties. *See Tenney*, 341 U.S. at 377, 71 S.Ct. at 788. Where any liability will be borne by the municipality, rather than by the defendant legislators, the rationale for according the legislators immunity disappears. Because Mayor Goode and the members of the City Council are named in their official capacities only, legislative immunity is inapplicable in the present case.

#### b. City Solicitor Lillie and Deputy City Solicitor Soltz

■ Defendants Charisse Lillie and David A. Soltz are named in their individual capacities as well as in their official capacities. At the time of the events alleged in the complaint, Charisse Lillie was Solicitor of the City of Philadelphia, and David Soltz was Deputy City Solicitor. They contend that they are entitled to absolute immunity for their conduct both during plaintiff's state court proceedings and in conjunction with the City Council.

Lillie and Soltz contend that they have absolute immunity for communications made during the course of plaintiff's state court proceedings under the state law doctrine of judicial privilege. The judicial privilege applies to statements by a party, a witness, counsel, or a judge, made during the course of judicial proceedings. *See Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 355 (1986). The phrase "judicial proceedings" is interpreted broadly when the communication at issue is relevant to the conduct of litigation: it applies not merely to pleadings and sessions in open court, but also to "less formal circumstances, such as preliminary conferences, negotiations, and routine correspondence exchanges between counsel in furtherance of their clients' interests." *Pelagatti v. Cohen*, 370 Pa.Super. 422, 536 A.2d 1337, 1344 (1987), *appeal denied*, 519 Pa. 667, 548 A.2d 256 (1988). While the doctrine of judicial privilege originally arose in the context of actions for defamation, it has been applied in Pennsylvania to other forms of tortious behavior as well. *See Brown v. Delaware Valley Transplant Program*, 372 Pa.Super. 629, 539 A.2d 1372, 1374–75 (1988).

The cases cited by both parties that apply the judicial privilege arise under state law. The existence of a state law privilege, however, is not conclusive: a section 1983 action arises under federal law, and in such an action there is a federal interest in defining the scope of applicable privileges. *See Ferri v. Ackerman*, 444 U.S. 193, 198 n. 13, 100 S.Ct. 402, 406 n. 13, 62 L.Ed.2d 355 (1979). Extension of the judicial privilege to section 1983 actions would effect a substantial enlargement of official immunity in the section 1983 context. On those occasions in which the Supreme Court has recognized absolute immunity to a section 1983 action, the official accorded immunity was vested with a substantial amount of discretion, whose exercise was a central feature of the official's duty. *See Imbler v. Pachtman*, 424 U.S. 409, 425–28, 96 S.Ct. 984, 992–94, 47 L.Ed.2d 128 (1976) (absolute immunity for prosecutors under section 1983); *Pierson v. Ray*, 386 U.S. 547, 554–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (absolute immunity under section 1983 for judges acting in judicial capacity); *Tenney*, 341 U.S. at 372–79, 71 S.Ct. at 786–90 (absolute immunity for legislators acting in

---

through the violation of her constitutional rights. Moreover, while plaintiff's claim implicates state actors and a city ordinance, it is plainly governed by federal law. *Brillhart* therefore does not support abstention.

their legislative capacity under section 1983). It is true that a city solicitor acting as defense counsel in a civil case exercises a measure of discretion in determining how to conduct the litigation; that measure of discretion, however, does not appear appreciably different from the discretion exercised by an attorney conducting comparable litigation in private practice. In contrast, a prosecutor exercises broad discretion in determining whether to initiate and prosecute a case; the threat of personal liability might well deter a prosecutor from exercising this discretion in the public interest. *See Imbler*, 424 U.S. at 424–25, 96 S.Ct. at 992–93. Defendants Lillie and Soltz have failed to carry the burden of demonstrating that they are entitled to absolute immunity based on their roles in the conduct of plaintiff's state court litigation.[7]

The only actions that Lillie and Soltz are alleged to have taken outside the scope of the state court proceedings are those related to the drafting and passage of Bill 1057 by the City Council. To the extent that Lillie and Soltz participated in the drafting of the bill and aided the City Council in understanding the meaning of the bill's provisions, they were acting as legal aides in the course of legislative drafting. Therefore, if the members of the City Council would be entitled to absolute immunity against being sued in their individual capacities, Lillie and Soltz would likewise be entitled to absolute immunity as to these actions. *See Aitchison*, 708 F.2d at 99–100.

The Third Circuit has set forth the requirements for legislative immunity as follows:

> First, the act must be "substantially" legislative, *i.e.*, legislative in character. Legislative acts are those which involve policy-making decisions of a general scope or, to put it another way, legislation involves line-drawing. Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration. In addition, the act must be "procedurally" legislative, that is, passed by means of established legislative procedures. This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve.

*Ryan v. Burlington County*, 889 F.2d 1286, 1290–91 (3d Cir.1989). Plaintiff argues that the City Council did not act legislatively because it did not pass Bill 1057 according to the procedures required by the Philadelphia Home Rule Charter. She asserts that the members of the City Council, if sued in their individual capacity, would not be entitled to legislative immunity. Her argument could be read, by extension, to contend that Lillie and Soltz are not entitled to legislative immunity.

██ Such an argument, if made, would be unavailing. There is no suggestion in the complaint that the advice that Lillie and Soltz gave to the City Council in connection with the City Council's consideration of Bill 1057 followed other than ordinary procedures, nor is there a suggestion in the complaint that either Lillie or Soltz participated in the decision by the City Council to suspend the rules and pass Bill 1057 without public hearings. It appears from the complaint that at all times when Lillie and Soltz played the role of legal aides to the City Council, the City Council was acting in a procedurally proper manner. Lillie and Soltz are therefore entitled to legislative immunity for all claims against them arising from the drafting of Bill 1057 and statements concerning the content of the bill to the City Council.

### 4. *Failure to state a claim*

#### a. Section 1983

To state a section 1983 claim, a plaintiff must allege (1) conduct by a person acting

---

7. Even if defendants Lillie and Soltz are not entitled to absolute immunity, they may be entitled to qualified immunity. A defense of qualified immunity, however, cannot be successfully asserted on a 12(b)(6) motion to dismiss. *See Black v. Bayer*, 672 F.2d 309, 316 (3d Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 230, 74 L.Ed.2d 182 (1982).

under color of state law that (2) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir.1990). The individual defendants do not contend that they did not act under color of state law. Likewise, it is apparent, from the discussion above, that plaintiff has alleged a deprivation of her constitutional rights. Defendants contend that plaintiff has nevertheless failed to state a claim under section 1983 because she has failed to plead the elements of her claim with particularity and because she has failed to plead facts sufficient to establish municipal liability.

i.  Failure to plead with particularity

█  As a general rule, pleadings are to be construed liberally. *See Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). The Third Circuit has set a higher standard for civil rights complaints, however. In *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir.1980), the court wrote:

> [A] substantial number of these cases are frivolous or should be litigated in the State courts; they all cause defendants—public officials, policemen and citizens alike—considerable · expense, vexation and perhaps unfounded notoriety. It is an important public policy to weed out the frivolous and insubstantial cases at an early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims.

*Id.* at 204 (quoting *Valley v. Maule*, 297 F.Supp. 958, 960–61 (D.Conn.1968). To meet this concern, a civil rights plaintiff may not rely on conclusory allegations, but must plead sufficient facts to allow the court to determine if the complaint is frivolous, and to give defendants adequate notice to frame a responsive pleading. *See District Council 47, American Federation v. Bradley*, 795 F.2d 310, 313 (3d Cir.1986); *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 67 (3d Cir. 1986).

█  In the present case, it is readily apparent that plaintiff has pled sufficient facts to give rise to an actionable civil rights complaint. The complaint also identifies defendants'· allegedly wrongful acts with sufficient specificity to allow defendants to frame an answer. This is all that plaintiff must do to defeat a 12(b)(6) motion to dismiss for lack of particularity. *See Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir.1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

ii.  Municipal and official liability

█  Defendants contend that, under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), plaintiff has failed to state a claim against the city and the individual defendants in their official capacities. *Monell* holds that a municipality may only be held liable under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,· inflicts the injury." *See id.* at 694, 98 S.Ct.· at 2037. In the present case, the Mayor and the members of the City Council are plainly the lawmakers of the City of Philadelphia, and their official actions are fairly interpreted as setting government policy. Moreover, plaintiff alleges that the retroactive provisions of Bill 1057 were enacted specifically to deprive her of her state court remedy. To the extent that the actions of Lillie and Soltz were in pursuit of this same end, they may be viewed as part of the same government policy. These allegations of a government policy or custom are sufficient to withstand a motion to dismiss.

b.  Sections 1985 and 1986

Count II of the complaint purports to state a claim under 42 U.S.C. § 1985, which addresses conspiracies to interfere with civil rights. The first clause of section 1985(2) provides a remedy for one injured by a conspiracy to deter that person "by force, intimidation or threat" from being a party, witness, or juror in a legal proceeding. Plaintiff alleges that defendants Lillie

and Soltz conspired to prevent her from being a party to a state court action by harassing conduct that was designed to increase her litigation expenses to the point where she could no longer bear them. Plaintiff further alleges that the other defendants knowingly participated in the conspiracy by enacting Bill 1057 by improper means. Defendants' statement that "[p]laintiff has made no allegation that defendants sought to intimidate plaintiff in order to prevent her from being a witness, juror or party in a lawsuit" is plainly wrong. Defendants' Motion to Dismiss at 16.

Likewise, defendants' argument that Count III of the complaint fails to state a claim under section 1986 also must be rejected.[8] The sole basis of defendants' argument is that a party may not maintain a claim under section 1986 unless the party has a viable claim under section 1985. Because defendants have failed to show that plaintiff has not stated a viable section 1985 claim, and because Count III otherwise appears to allege the necessary ingredients of a claim under section 1986, Count III will not be dismissed.

#### c. First and Fourteenth Amendments

■ Count IV of the complaint purports to state a claim directly under the First and Fourteenth Amendments. As I have determined above, plaintiff has stated claims under 42 U.S.C. sections 1983, 1985, and 1986. Those sections make available to plaintiff a full array of legal and equitable remedies for the alleged violation of her constitutional rights. Where a plaintiff's claim falls within the bounds of the Civil Rights Act, that plaintiff may not maintain a separate cause of action directly under the Constitution. *See Rogin v. Bensalem Township*, 616 F.2d 680, 687–88 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Count IV therefore must be dismissed.

#### d. "Official Oppression"

Count V of the complaint purports to state a claim under the Pennsylvania Official Oppression Act, 18 Pa.C.S.A. § 5301. That act provides, in relevant part:

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

\* \* \* \* \* \*

(2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

18 Pa.C.S.A. § 5301. Defendants argue that section 5301, like all sections in Title 18 of the Pennsylvania Consolidated Statutes, merely sets forth the elements of a crime and does not create a private cause of action.

Plaintiff counters that courts in Pennsylvania have used criminal statutes to impose tort liability, citing *Polsky v. Radio Shack*, 666 F.2d 824 (3d Cir.1981), *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir.1979), and *Molush v. Orkin Exterminating Co.*, 547 F.Supp. 54 (E.D.Pa.1982). None of these cases, however, involved direct imposition of tort liability for violation of a criminal statute. All three cases were wrongful discharge actions in which the plaintiff had been discharged following a polygraph examination. The plaintiff in each case alleged that his discharge was in violation of public policy, as expressed in Pennsylvania's anti-polygraph statute, 18 Pa.C.S.A. § 7321, a statute that imposed criminal penalties. The tort of wrongful discharge in violation of public policy had been explicitly recognized by the Pennsylvania courts. *See Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174, 180 (1974); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119, 121 (1978). The courts did not regard the Pennsylvania anti-polygraph statute as creating an independent civil cause of action; rather, they merely treated the statute as

---

**8.** Section 1986 imposes liability on "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed." 42 U.S.C. § 1986.

an expression of a strong public policy that the employers had disregarded in discharging their respective employees. *See Polsky,* 666 F.2d at 828; *Perks,* 611 F.2d at 1366; *Molush,* 547 F.Supp. at 56.

■ Plaintiff has cited no case in which a Pennsylvania court has imposed tort liability for violation of a section of the Pennsylvania criminal code. In the single directly pertinent case that has come to my attention, a member of this court concluded that section 5301 did not create a claim that was actionable in federal court. *See Shaw v. Freeman,* Civ. No. 90–7478, 1991 WL 225010 at *4, 1991 U.S. Dist. LEXIS 15511 at *9 (E.D.Pa. Oct. 29, 1991). In the absence of guidance from the Pennsylvania courts, I am unwilling to imply from a criminal statute a private right of action that will have the effect of significantly increasing public officials' exposure to civil liability under state law. Count V will therefore be dismissed.[9]

e. Pennsylvania Constitution

Count VI of the complaint purports to state a claim under Article I, Sections 1 (due process), 7 (freedom of speech), and 11 (access to the courts) of the Pennsylvania Constitution. Defendants do not explicitly address this count; they do however, contend that all of plaintiff's state law claims are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541–8564. For present purposes I will treat defendants' argument as directed at Count VI.

■ Neither party has briefed what would appear to be a substantial and complex issue of whether Pennsylvania recognizes a private right of action for money damages against government officials for violations of the Pennsylvania Constitution.

Assuming, *arguendo,* that such an action would be cognizable in a Pennsylvania court, I am bound to conclude that the Political Subdivision Tort Claims Act bars recovery from the City of Philadelphia.[10] Section 8541 of the Act provides: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541. Section 8542 sets forth a narrow exception to the general rule of section 8541, providing that a municipality may be liable for its own negligent acts or the negligent acts of an employee acting within the scope of his official duties. The section, however, limits recovery to eight categories of official responsibility, none of which is applicable here;[11] the section also excludes from the definition of negligence "acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S.A. § 8542(a)(2). Because the acts alleged here do not constitute "negligence" within the meaning of section 8542, and because the action does not fall within one of the eight categories set forth in that section, the general rule of immunity set forth in section 8541 applies to the city. *See Kuchka v. Kile,* 634 F.Supp. 502, 513 (M.D.Pa.1985).

■ The defendants named in their individual capacities, however, are not immune under the Political Subdivision Tort Claims Act. Section 8545 provides that, as a general rule, municipal employees shall be immune to the same extent as municipalities. Section 8546 further provides that a municipal employee may plead as a defense that the conduct was authorized or required by law, that the employee reasonably believed

---

**9.** Defendants contend that even if section 5301 created a private cause of action, they would be immune under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541 *et seq.* Because I have determined that plaintiff's claim under section 5301 should be dismissed, I need not resolve this question. I note, however, that section 8550 of the Tort Claims Act abrogates immunity for local officials for willful misconduct.

**10.** Recovery from the other defendants in their official capacities would likewise be barred, as the city would bear the cost of any such recovery.

**11.** The categories are vehicular liability; care, custody or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; and care, custody or control of animals. 42 Pa.C.S.A. § 8542(b)(1)–(8).

the conduct was authorized or required by law, or that the act was within the employee's policy-making discretion. Section 8550, however, creates an exception to the general rule. It provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of section 8545 (relating to official liability generally), 8546 (relating to defenses of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S.A. § 8550. Plaintiff has alleged that defendants Lillie and Soltz committed acts that, if the allegations of the complaint were true, would amount to willful misconduct and possibly the crime of official oppression.[12] The Political Subdivision Tort Claims Act therefore does not accord Lillie and Soltz immunity to claims under Pennsylvania law.[13] *See Kuchka,* 634 F.Supp. at 513.

### f. Punitive damages

■ Plaintiff's complaint seeks an award of "punitive and exemplary damages" against all defendants. Defendants contend, and plaintiff concedes, that such damages are unavailable under sections 1983, 1985, and 1986 against a municipality or against local officials in their official capacity. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Further, there is no surviving state law claim against either the city or the individual defendants in their official capacity. To

the extent that the complaint purports to state a claim for punitive damages against the City of Philadelphia and the individual defendants in their official capacity, that claim must be dismissed. Punitive damages are available, however, in a section 1983 action against a defendant in his or her individual capacity. *See Smith v. Wade,* 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983). The complaint therefore states a claim for punitive damages against defendants Lillie and Soltz.[14]

### III. Conclusion

For the reasons stated above, defendants' motion to dismiss will be granted with respect to plaintiff's claims against defendants Lillie and Soltz in their individual capacities for actions that those defendants took in conjunction with the City Council concerning the drafting and consideration of Bill 1057. Defendants' motion will also be granted with respect to plaintiff's claims under the First and Fourteenth Amendments, plaintiff's claim under 18 Pa. C.S.A. § 5301, plaintiff's claim under the Pennsylvania Constitution as to all defendants except Lillie and Soltz in their individual capacities, and plaintiff's claim for punitive damages against all defendants except Lillie and Soltz in their individual capacity. Defendants' motion will be denied in all other respects. An appropriate order follows.

### ORDER

Upon consideration of defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and plaintiff's response thereto, for the reasons given in the accompanying memorandum, it is hereby ORDERED and DIRECTED that defen-

12. See part 4.d, *supra.*

13. This conclusion should not be read as a determination that Lillie and Soltz may be held directly liable under the Pennsylvania Constitution. As was noted above, the viability of a claim under the Pennsylvania Constitution presents a difficult legal issue, one that the parties have not addressed in their briefs. Defendants may wish to file a supplemental motion for partial summary judgment directly addressing the issue noted here.

14. As I have assumed, for the purposes of this motion, that the Pennsylvania Constitution creates a private right of action for constitutional torts, and as the parties have provided no further illumination, I must assume, for the purposes of this motion, that plaintiff has adequately stated a claim for punitive damages under the Pennsylvania Constitution against Lillie and Soltz in their individual capacity.

dants' motion is GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff's complaint is DISMISSED insofar as it purports to state a claim against defendants Charisse Lillie and David A. Soltz in their individual capacities for actions taken pursuant to the drafting and consideration of Bill 1057;

2. Count IV of the complaint, purporting to state a claim under the First and Fourteenth Amendments to the United States Constitution, is DISMISSED;

3. Count V of the complaint, purporting to state a claim under 18 Pa.C.S.A. § 5301, is DISMISSED;

4. Count VI of the complaint, purporting to state a claim under the Pennsylvania Constitution, is DISMISSED as to all defendants except Charisse Lillie and David A. Soltz in their individual capacities;

5. Plaintiff's claim for punitive damages against defendant City of Philadelphia and against all other defendants in their official capacities is DISMISSED; and

6. Defendants' motion is DENIED in all other respects.