**Matthew WARNER, Plaintiff,**

v.

**TOWNSHIP OF SOUTH HARRISON, et al., Defendants.**

Civil No. 09–6095 (JBS/JS).

United States District Court, D. New Jersey.

June 26, 2012.

Opinion Denying Reconsideration Sept. 17, 2012.

---

Surinder K. Aggarwal, Esq., William H. Buckman, Esq., The William H. Buckman Law Firm, Moorestown, NJ, for Plaintiff Matthew Warner.

A. Michael Barker, Esq., Todd J. Gelfand, Esq., Barker Scott & Gelfand, Linwood, NJ, for Defendants Township of South Harrison, Colleen Bianco, Gary Spinner, James McCall and Warren Mabey.

Brian Victor Lucianna, Esq., Brian V. Lucianna, P.C., Audubon, NJ, for Defendant Jeannine Campbell.

*OPINION*

SIMANDLE, Chief Judge.

## I. INTRODUCTION

This matter is before the Court on the motion of Defendants Colleen Bianco, Warren Mabey, James McCall, Gary Spinner and Township of South Harrison (collectively the "Defendants") for summary judgment. [Docket Item 38.] Plaintiff Matthew Warner filed opposition. [Docket Item 44.] For the reasons stated herein, the court will grant in part and deny in part Defendants' motion for summary judgment.

## II. BACKGROUND

### A. Statement of the Facts and Procedural History

The instant action arises out of an incident on April 16, 2008 when Plaintiff Matthew Warner ("Plaintiff") performed a port scan on the Township of South Harrison's computer network at the request of Deputy Mayor Robert Campbell. Plaintiff is a computer IT professional and served as a member on the Township Planning and Zoning Board in 2008. In addition, as a result of his IT background, the Plaintiff was appointed to the Resident Task Force in 2007 by the Township Committee. The purpose of the Resident Task Force was "to review the needs of the Township regarding IT architecture, data storage, hardware, software and disaster recovery requirements."[1] (Pl.'s Ex. A, Minutes of the Township Committee meeting held on June 27, 2007.)

On April 16, 2008, Deputy Mayor Campbell invited the Plaintiff to attend the Township Committee meeting that night to discuss the Township's needs for IT services and asked the Plaintiff to run a port scan on the Township network prior to the meeting to assess the security of the Township's computers. (Defs.' Ex. 3, Deposition of Matthew Warner, February 22, 2011 ("Warner Dep.") at 102:25–103:9; 134:12–134:18). The Plaintiff agreed and on April 16, 2008, Plaintiff entered an open door to the South Harrison Township Clerk's Office during a closed session part of the Township Committee meeting. He unplugged the Cat 5 cable from a computer and inserted it into his personal laptop

---

**1.** While the Township Committee moved to proceed with the establishment of the Resident Task Force, the Resident Task Force was never officially formed by written resolution.

in an effort to obtain an IP address to connect to the internet and check his company email. (Warner Dep. at 53:1–4; 58:16–23; 61:17–20; 62:17–19; 69:5–9.) When checking his email, Plaintiff conducted the port scan which had been requested by Deputy Mayor Campbell. (Warner Dep. at 70:24–71:1–9.) During the network scan, Plaintiff observed open ports that were susceptible to viruses. *Id.*

While Plaintiff was in the Clerk's Office, Deputy Clerk Celeste Keen discovered the Plaintiff in the office, shutting down his computer. (Warner Dep. at 74:10–25.) The Plaintiff then exited the building and met with Deputy Mayor Campbell in the parking lot and advised Campbell that he had run a port scan and that what he had seen was "ugly." (Warner Dep. at 75:23–76:8.)

After the closed session meeting on April 16, 2008, the Deputy Clerk Celeste Keen relayed to the Township Administrator Colleen Bianco ("Bianco") that she had observed the Plaintiff unattended in the Clerk's office and that the Plaintiff was connected to the computer network. (Defs.' Ex. 7, Deposition of Colleen Bianco, March 16, 2011 ("Bianco Dep.") at 42:17–43:7.) The next morning on April 17, 2008, Bianco circulated an e-mail to the Township Committee members and administrative employees of the Township, as well as Police Chief Warren Mabey, about the situation. (Defs. Ex.8.)

Aside from Deputy Mayor Campbell, other members of the Township Committee and Township Administrator Bianco did not know that the Plaintiff was authorized to access the Township computer network and were alarmed to find the Plaintiff using the computer in the Clerk's office unsupervised. (Defs.' Ex. 9, Emails from Committee Members, S Harrison, 14–27).

Bianco contacted members of the Township Committee as well as Chief of Police Warren Mabey ("Mabey") to determine

why the Plaintiff was accessing the Township's computer network without authorization. (Defs. Ex.8.) Deputy Mayor Campbell did not disclose to the other members of the Township Committee that he had authorized the Plaintiff to perform the port scan on the network. (Defs.' Ex. 9, Emails from Committee Members, S Harrison, 16–18).

Chief Mabey then contacted the Plaintiff to set up a meeting to speak with him about the incident on April 16, 2008. (Pl.'s Ex. 11.) Prior to meeting with Chief Mabey, the Plaintiff spoke with Deputy Mayor Campbell. (Warner Dep. 87:19–90:7). The Plaintiff and Deputy Mayor Campbell agreed that the Plaintiff should tell Chief Mabey that Plaintiff was using the Clerk's Office computer to check his email. (Warner Dep. 89:25–90:7.) In fact, Plaintiff did check his email on the Clerk's office computer; however, Plaintiff then proceeded to do a port scan of the Township's network to check for security issues. (Warner Dep. 89:12–18.) When the Plaintiff was asked by Chief Mabey about his reason for accessing the Clerk's office computer, Plaintiff maintained that he was checking his email and did not disclose to Chief Mabey that he also ran a port scan on the Township's network. (Warner Dep. at 92:4–92:21.)

After his interview with the Plaintiff, Chief Mabey contacted the New Jersey State Police Cyber Crimes Unit on April 18, 2008, and the state police subsequently took over the investigation. (Defs.'s Ex. 10, Deposition of Chief of Police Warren Mabey, May 9, 2011 ("Mabey Dep.") at 52:15–53:12.) The state police and an attorney from the Gloucester County Prosecutor's office interviewed the Plaintiff and concluded that there was no criminal activity involved in this incident and that the Plaintiff "was asked to scan the network and believed he had the proper authority

to do so." (Defs.' Ex. 13, Investigation Report by the New Jersey State Police, June 24, 2008 ("Investigation Report") at S Harrison 105, 107.) The state police drafted an internal investigatory report on the incident and recommended that any further action on the matter be handled on the administrative level. (Investigation Report at S Harrison 107.)

Chief Mabey then informed the South Harrison Township Committee that as a result of the State Police cyber crimes unit investigation, there would be no criminal charges filed, that the investigation was closed and that it was recommended the matter be handled on an administrative level. (Deposition of James McCall, June 29, 2011 ("McCall Dep.") at 40:15–41:9). As a result, the Township Committee voted to authorize the formation of a Special Investigative Subcommittee to investigate the incident further. (Defs.' Ex. 17, First Investigative Subcommittee Report.) Defendants James McCall and Gary Spinner were appointed as the two exclusive members of the Investigative Subcommittee. *Id.*

The Investigative Subcommittee subpoenaed the testimony of the Plaintiff. (Defs.' Ex. 21.) The Plaintiff asserted his Fifth Amendment privilege as to any questioning and declined to testify per the advice of his counsel. (Defs.' Ex. 22.)

The Investigative Subcommittee also attempted to obtain a copy of the State Investigatory Report by submitting a request pursuant to the Open Public Records Act, N.J.S.A. 47:1A–1, *et seq.* This request was denied by the State Police who advised the Investigative Subcommittee that criminal investigatory records were exempt from release under OPRA absent a court order. (Pl.'s Ex. AA.)

Defendants McCall and Spinner then issued a subpoena to the New Jersey State Police requesting the production of the State Police investigation report of the April 16, 2008 incident. (Pl.'s Ex. CC.) The state police responded by letter and advised Defendant McCall that the investigation reports are not public record. However, the state police could provide the case status of the report as Unfounded/Closed for a fee of $16.00. (Pl.'s Ex. DD.) A money order for $16.00 was submitted to the New Jersey State Police. (Defs.' Ex. 25.)

Defendant McCall testified at his deposition that Defendant Spinner actually received the State Police investigation report under OPRA. (Pl.Ex. D, McCall Deposition, at 106:9–17; 109:20–25; 110:1–2.). Defendant Spinner testified at his deposition that McCall was the one to receive the copy of the New Jersey State Police investigation report and Spinner further averred that McCall provided him with a copy. (Pl.Ex. E, Deposition of Gary Spinner, March 16, 2011) ("Spinner Dep.")

Despite this inconsistency, it is undisputed that the Investigative Subcommittee received an unredacted copy of the state investigatory report on or about December 3, 2008, though it is unclear how Defendants Spinner and McCall gained access to this document. (Defs.' Ex. 17, "Special Investigatory Sub–Committee Report" at S Harrison 47.) It may have been furnished to them by Chief Mabey, as now discussed.

It is also undisputed that Defendant Mabey obtained an unredacted copy of the State Police investigation report in early July 2008. (Mabey Dep., 120:22–23; Ex. FF.) The Plaintiff argues in its brief that Defendant Mabey provided a copy of the unredacted report to Defendants Spinner and McCall since their OPRA requests were denied and they were unable to obtain the report through subpoena. Defendants McCall and Spinner maintain that they received a copy of the unredacted report from the State Police after submit-

ting the $16.00 money order. Defendant Mabey was later advised by the Township Solicitor on December 18, 2008, that any criminal investigation reports in connection with the April 16, 2008 incident were not subject to release and were confidential. (Pl.'s Exs. O and P.) On December 29, 2008, the Investigative Subcommittee consisting of Defendants McCall and Spinner issued a report setting forth its efforts and findings. (Defs.' Ex. 17, Investigative Subcommittee Report.) The unredacted State Police investigation report was attached as an exhibit to the Subcommittee report. (Defs.' Ex. 17.) The unredacted State Police investigation report included Plaintiff's social security number, home address, date of birth, driver's license number and personal telephone numbers. (Defs.' Ex. 17.)

The report was issued during the course of a public Township Committee meeting on December 28, 2009. Defendant Spinner handed out copies of the report with the incorporated exhibits, including the unredacted state police investigatory report, to the Township Committee Members and the Municipal Clerk. (Warner Dep. at 32:10–12). The Municipal Clerk then handed a copy of the report with the incorporated exhibits to Robert Diaz, who had been elected to the Township Committee but was not yet serving. (Defs.' Ex. 26, Deposition of Matthew Warner, Day 2, May 20, 2011 ("Day 2 Warner Dep.") at 21:19–22:1.)

Defendant McCall presented the findings of the Subcommittee report at the meeting in open session by reading the contents of the Subcommittee report. (Defs.' Ex. 32, Plaintiff's certified responses to interrogatories propounded by Defendant James McCall at Interrogatory No. 3.) Defendant McCall did not read the Plaintiff's social security number or driver's license number out loud, but the Plaintiff testified in his deposition that Defen-

dants Spinner and McCall did advise the public on how to obtain the report pursuant to an OPRA request. (Warner Dep. at 144:23–145:6.)

Following the December 29, 2008 meeting, Plaintiff made a request for the Investigative Subcommittee report on December 30, 2008. (Defs.' Ex. 27, Warner OPRA request.) Defendant Jeannine Campbell also submitted an OPRA request for the Subcommittee report on December 30, 2008. (Defs.' Ex. 29, Receipt issued to Jeannine Campbell for OPRA request.) The Municipal Clerk provided a copy of the Subcommittee Report and incorporated exhibits to Plaintiff and Jeannine Campbell. (Defs.' Ex. 28 and 29.) These copies included a copy of the unredacted state investigatory report as said report was incorporated as an exhibit to the Subcommittee Report. Defendant Jeannine Campbell then made copies of the Subcommittee Report with the incorporated exhibits and gave these copies to members of the public. (Day 2 Warner Dep. at 4:22; Deposition of Jeannine Campbell, February 14, 2011 ("Jeannine Campbell Dep.") at 67:18–25; 68:1–16; 84:4–5.) Consequently, the unredacted state investigatory report with the Plaintiff's personal identifying information was distributed to members of the public.

The Plaintiff objected to the First Investigatory Subcommittee's failure to redact his social security and driver's license numbers on the state police investigation report when attaching the document to the Subcommittee Investigation Report at the next meeting of the Township Committee on January 5, 2009. The Plaintiff memorialized his objection by way of letter to the Township that same day. (Pl.'s Ex. M and GG.)

On January 8, 2009, the Municipal Clerk wrote to the Government Records Council acknowledging that the Township's failure

to redact Plaintiff's private information on the State Police Investigation Report prior to its dissemination violated the Open Public Records Act. (Pl.'s Ex. N.)

During this incident and investigation, Plaintiff testified that Defendants McCall, Spinner and Bianco referred to the Plaintiff as a "hacker" and a "liar." Plaintiff has also testified that Defendant McCall referred to the Plaintiff as "corrupt" in a public Township meeting in November, 2008. Plaintiff also avers that Defendant Mabey has referred to this incident as a "hacking incident."

After the Investigative Subcommittee report was made public, the Plaintiff was asked not to renew his term with the Township Planning and Zoning Board. It is unclear who in the Township made the decision to terminate the Plaintiff from the Planning and Zoning Board. At the time Plaintiff was asked not to renew his position, Charles Tyson was the Mayor of the Township and as Mayor, had the authority to make an appointment to the Planning and Zoning Board by way of resolution. (Pl.Ex. E, Deposition of Gary Spinner, March 16, 2011 ("Spinner Dep.") at 15:12–20; 16:23–25; 17:1–4; 17:24–25; 18:1.) Tyson testified that Defendant Spinner contacted him to arrange a meeting for the purpose of having Plaintiff resign from the Planning and Zoning Board. (Pl.'s Ex. I, Deposition of Charles Tyson, June 10, 2011 ("Tyson Dep.") at 85:6–89:17.) Tyson also indicated the purpose of the meeting with Defendant Spinner and a concurrent meeting with Chief Mabey was to discuss the "Matt Warner Situation" and Plaintiff's position on the Planning and Zoning Board. (Pl.'s Ex. J.) However, in his deposition, Tyson denied having anything to do with Plaintiff's removal from the Planning and Zoning Board and denied having any knowledge as to who made the decision not to renew Plaintiff's position. (Tyson Dep. at 25:3–25:23.)

The Plaintiff then filed the instant action against the Defendants Township of South Harrison, Jeannine Campbell, Colleen Bianco, Gary Spinner, James McCall and Warren Mabey. In the First Amended Complaint, the Plaintiff alleges Defendants violated his right to privacy under both the Federal and State Constitutions. The Plaintiff also brings a Fourteenth Amendment defamation claim against the Defendants. Lastly, the Plaintiff brings a *Monell* claim for violation of federal rights against the Township of South Harrison and maintains that the municipality failed to train, supervise and/or discipline the individual defendants.

The Defendants filed an answer to the First Amended Complaint and discovery has been completed. All the Defendants with the exception of Jeannine Campbell now move for summary judgment.

### B. The Instant Motion

Defendants Township of South Harrison, Mabey, Bianco, McCall and Spinner move for summary judgment and urge the court to dismiss all claims against them.[2] First, the Defendants argue that the Plaintiff's right to privacy claim should be dismissed. The Defendants maintain that there is no evidence Defendants Bianco or Mabey had any personal involvement in releasing Plaintiff's personal identifiers contained in the state investigatory report. The Defendants also argue that McCall and Spinner did not disclose or disseminate the state investigatory report to the public; rather, the non-defendant Municipal Clerk was responsible for releasing the report to members of the public at the public meeting and releasing the unredacted report pursuant to the OPRA requests filed by Plaintiff and Defendant Jeannine

**2.** Defendant Jeannine Campbell has not filed a motion for summary judgment and has not

joined the instant motion filed by her co-defendants.

Campbell. Finally, the Defendants rely on *Weisberg v. Riverside Twp.*, 180 Fed.Appx. 357, 365 (3d Cir.2006) and argue that a plaintiff must show that the disclosure was intentional in order to prevail on a constitutional right to privacy claim. Here, the Defendants maintain that the evidence shows any disclosure of Plaintiff's personal identifiers was at most negligent and cannot form the basis of a right to privacy claim.

Next, the Defendants argue that the Plaintiff's *Monell* claim must be dismissed because the Plaintiff has produced no evidence of an unlawful policy or custom. The Defendants argue that a policy or custom cannot be inferred from a single instance of misconduct by a non-policy making employee, the Municipal Clerk. The Defendants maintain that none of the Defendants released the report publicly and therefore, this single instance of disclosure of personal identifiers cannot serve as a basis for finding an unlawful municipal policy or custom.

The Defendants next argue that the Plaintiff's defamation claim must be dismissed because no false statement was made by the Defendants and the decision to terminate the Plaintiff from the Planning and Zoning Board was not made by any of the Defendants in this case. In addition, Defendants McCall and Spinner argue that their comments that Plaintiff was a "liar" or "corrupt" are entitled to legislative immunity as opinions. Defendants also argue that the term "hacker" is not defamatory. The Defendants also maintain that a name clearing hearing was made available to the Plaintiff on two occasions and the Plaintiff declined to participate. Further, the Defendants argue that any stigma was created by the Plaintiff's filing of the instant lawsuit and not the action of the Defendants.

Finally, the Defendants argue that if the court finds the Plaintiff's claims for defamation and violation of his right to privacy are considered viable, the Defendants should be entitled to qualified immunity as their actions were objectively reasonable under the circumstances.

The Plaintiff, in opposition, argues that he has produced sufficient evidence to support his claims and genuine issues of material fact prevent summary judgment. First, the Plaintiff argues in his brief that Defendants McCall and Spinner violated his right to privacy by including the unredacted investigatory report as an exhibit the publicly available Investigation Subcommittee Report. The Plaintiff maintains that Defendants Spinner and McCall should have redacted his personal identifiers from the report prior to incorporating it into their public committee report. By incorporating his personal identifiers into a public document, Plaintiff argues that Defendants McCall and Spinner disclosed his personal information and violated his right to privacy. Plaintiff also argues that Defendants McCall and Spinner directed the Municipal Clerk to make copies and distribute them to the members of the public at the December 28, 2008 Township Committee meeting. Plaintiff further argues that qualified immunity is inappropriate because McCall and Spinner's actions were clearly unreasonable.

Next, the Plaintiff contends that he has satisfied his burden to establish *Monell* liability because Defendants Spinner and McCall are members of the Township Committee and therefore are policy makers of the municipality. The Plaintiff maintains that a single violation of a constitutional right by a policy maker is sufficient to trigger municipal liability and establish an unlawful policy. Therefore, the Plaintiff argues that his *Monell* claim should not be dismissed.

Finally, the Plaintiff maintains that his defamation claim remains viable. In par-

ticular, the Plaintiff argues that Defendants McCall and Spinner made several false statements including that the Plaintiff had breached the Township network and that the Plaintiff had provided false statements and lied to law enforcement and that the Plaintiff was a hacker. The Plaintiff argues that he has satisfied the stigma plus requirement by producing evidence that he lost his position on the Planning and Zoning Board due to the defamatory statements of the Defendants. The Plaintiff maintains that legislative immunity is not proper in this case because the Defendants were acting in an administrative, not legislative capacity, when certain defamatory statements were made. Finally, the Plaintiff contends that the Defendants should not be entitled to qualified immunity because their actions were not objectionably reasonable.

In addition, both parties have briefed the significance of the recent Supreme Court opinion, *NASA v. Nelson,* —— U.S. ——, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011). The Defendants argue that the *NASA* opinion expressed uncertainty as to the nature of the right to information privacy, and therefore qualified immunity is appropriate as the right allegedly violated by the Defendants is not clearly established. The Plaintiff argues that *NASA* is factually distinguishable from the instant action because *NASA* involved government information collection practices whereas this case deals with the public disclosure of a confidential state police investigatory report. Therefore, the Plaintiff argues that qualified immunity is not appropriate and *NASA* is inapplicable to the analysis of his right to privacy claim.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.* The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). *See also Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

### B. 42 U.S.C. § 1983—Right to Privacy Claim

■ As discussed in this court's previous July 26, 2010 Opinion, 2010 WL 3001969, the Constitution does not expressly protect a right to privacy, and though the Supreme Court has not found such a generalized right, the Court has recognized "zones of privacy" in the various amendments to the Constitution. *C.N. v. Ridgewood Bd. of Educ.,* 430 F.3d 159, 178 (3d Cir.2005). These zones protect two types of privacy interests: " 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.' " *Hedges v. Musco,* 204 F.3d 109, 121 (3d Cir.2000) (quoting *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64, (1977)).

It is the first type of privacy—informational privacy—that is at issue in this case. " 'The right not to have intimate facts concerning one's life disclosed without one's consent' is 'a venerable right whose constitutional significance we have recognized in the past.' " *C.N.,* 430 F.3d at 179 (quoting *Bartnicki v. Vopper,* 200 F.3d 109, 122 (3d Cir.1999)). Analysis of a privacy claim requires two steps. First the Court must determine whether the information is entitled to any privacy protection. *Id.*

> In determining whether information is entitled to privacy protection, [the Third Circuit has] looked at whether it is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny.

*Fraternal Order of Police v. City of Philadelphia,* 812 F.2d 105, 112–113 (3d Cir. 1987). If a privacy interest is implicated, then the Court must weigh the various competing interests at issue and decide whether the disclosure was justified. *C.N.,* 430 F.3d at 179–80.

> The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 578 (3d Cir.1980); *see C.N.,* 430 F.3d at 180.

In analyzing whether any privacy interest was implicated by the disclosure of the unredacted state investigatory report, this court held that disclosure of the substance of the police report and the related investigation was insufficient to trigger the protections of the Due Process Clause. The court noted that it is well-settled "that criminal records, including police reports, indictments, guilty verdicts, and guilty pleas, are inherently public—not private—documents and are thus beyond the purview of the Due Process Clause." *Nunez v. Pachman,* 578 F.3d 228, 233 (3d Cir. 2009); *Scheetz v. The Morning Call,* 946 F.2d 202, 207 (3d Cir.1991) (no privacy interest in police report documenting incident of domestic violence, though report never led to formal charges); *see Paul P. by Laura L. v. Verniero,* 170 F.3d 396, 403 (3d Cir.1999) ("[R]ecords of criminal convictions and pending criminal charges are by definition public, and therefore not protected.") (internal citations omitted).

However, the Court found that Plaintiff's privacy interests were implicated by the disclosure of his home address along with other detailed identifying information, such as his social security number. *See Paul P.,* 170 F.3d at 404 (finding that people have some nontrivial privacy interest in nondisclosure of their home addresses) *and McCauley v. Computer Aid, Inc.,* 242 Fed.Appx. 810, 813 (3d Cir.2007) (a person has no privacy interest in their social security number alone). The Court also noted in the context of the privacy exclusion to the Freedom of Information Act ("FOIA") that " 'the extensive use of Social Security numbers as universal identifiers in both the public and private sectors is one of the most serious manifestations of privacy concerns in the nation.' " *Sheet Metal Workers Int'l Ass'n v. U.S. Dep't of Veterans Affairs,* 135 F.3d 891, 898–899 (3d Cir.1998) (quoting *Int'l Bhd. of*

*Elec. Workers v. U.S. Dep't of Hous. and Urban Dev.*, 852 F.2d 87, 89 (3d Cir.1988)).

The Defendants argue that summary judgment is appropriate to dismiss the Plaintiff's right to privacy claim on three different grounds. First, the Defendants argue that the Supreme Court's decision in *NASA v. Nelson, supra,* calls into question the existence of a right to informational privacy under the federal constitution. Next, the Defendants argue that intent is required to trigger the protections of the due process clause and in this case, the Plaintiff has not produced evidence of an intentional disclosure of his social security number and home address. Finally, the Defendants argue that the Plaintiff has not produced any evidence that any of the Defendants actually disclosed Plaintiff's private information. Rather, the Defendants maintain that any disclosure was done by the Municipal Clerk, who is not a party to this action, or Jeannine Campbell, who is not a movant on this motion. The Court will address each of these arguments in turn.

### 1. Effect of NASA v. Nelson

After the issuance of this court's July 2010 Opinion, the Supreme Court announced its decision in *NASA v. Nelson,* —— U.S. ——, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011). Both parties have briefed this case and its potential impact on the court's previous reasoning which found the Plaintiff had a privacy interest which was implicated in the public disclosure of his home address, social security number and other personal identifiers. For the reasons discussed below, the court finds that *NASA* does not impact or alter the court's previous finding that the Plaintiff had a privacy interest in the non-disclosure of his social security number, home address and date of birth.

In *NASA,* the Supreme Court held that certain government inquiries conducted during a routine background check did not violate a person's constitutional right to privacy because the government had a legitimate interest in making these inquiries, the inquiries were reasonable under the circumstances, and the information was protected from public disclosure by the Privacy Act. 131 S.Ct. at 761–62. Specifically, the Supreme Court addressed whether the government could inquire about a prospective civil servant's previous treatment and counseling for illegal drug use and whether the government could ask open-ended questions of an applicant's self-designated references. *Id.* at 753.

In analyzing this issue, the majority expressly declined to address the continued viability of the right to privacy recognized in *Whalen, supra,* and *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), and stated, "we will assume for present purposes that the Government's challenged inquiries implicate a privacy interest of constitutional significance." *Id.* at 757. While Justice Scalia's concurrence, relied upon by the Defendants, casts doubt about the continued existence of the right to privacy articulated in *Whalen* and *Nixon,* the majority opinion expressly declined to address this issue as it was not raised by the parties and the majority found it unnecessary to analyze such a broad issue. The majority noted that it would utilize the approach set forth in the *Whalen* and *Nixon* decisions as "there is no evidence that those decisions have caused the sky to fall." *Id.* at 757 n. 10.

The majority also discussed the state and lower federal courts' approach to interpreting the constitutional right to privacy articulated in *Whalen* and *Nixon.* In particular, the Supreme Court cited *Fraternal Order of Police v. Philadelphia,* 812 F.2d 105, 110 (3d Cir.1987), the same case relied upon by this court in its previous

Opinion, and discussed that many courts hold that disclosure of certain personal information should be subject to a balancing test weighing the government's interest in disclosure against the individual's interest in privacy. *Id.* at 756 n. 9.

Therefore, the court does not interpret *NASA* to cast doubt upon the existence of a constitutional right to informational privacy. Rather, the court reads *NASA* as an affirmation that a person has a constitutional right to be free from undue disclosure of private information and that the balancing test articulated in *Fraternal Order of Police, supra,* is a proper way to balance the competing individual and governmental interests at stake.

#### 2. Intent Requirement

Next, the court must address whether intent is required to trigger a constitutional violation of an individual's right to information privacy. The Defendants rely on *Weisberg v. Riverside Twp.,* 180 Fed.Appx. 357 (3d Cir.2006), in support of their argument that intent to disclose is required to trigger the protections of the Due Process Clause. The court finds this argument unpersuasive.

In *Weisberg,* the Third Circuit held that an inadvertent disclosure of a person's medical information did not violate the constitutional right to informational privacy. 180 Fed.Appx. at 365. In that case, the plaintiff claimed that his constitutional right to informational privacy was violated when a school administrator accidentally put plaintiff's medical report into an envelope with another teacher's contract. The Third Circuit held that this negligent disclosure was insufficient to trigger the protections of the Due Process Clause. The Third Circuit relied on *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), which held that "the Due Process Clause is simply not implicated by a *negligent* act of an official

causing unintended loss of or injury to life, liberty, or property." *Id.* at 365 (citing *Daniels,* 474 U.S. at 328, 106 S.Ct. 662).

The Defendants maintain that *Weisberg* requires any disclosure of personal information be intentional in order to trigger a constitutional violation. The court does not read *Weisberg* as broadly as the Defendants argue. The Third Circuit and the Supreme Court very clearly articulated that a negligent disclosure is insufficient to violate a person's right to information privacy. These courts did not then conclude that all disclosures must be intentional in order to state a valid claim. Rather, these courts confined their holdings to negligent or accidental disclosures.

■ The instant matter does not involve a negligent disclosure of personal information. The Township Committee in this case requested the state investigatory report and were told on multiple occasions that the content of this report was confidential. It is unclear how Defendants Spinner and McCall ultimately obtained the report as the New Jersey State Police refused to disclose it and the deposition testimony of Defendants Spinner and McCall is inconsistent. The inclusion of the state investigatory report as an exhibit to the Subcommittee's report was intentional and deliberate. It is evident that the Subcommittee read and summarized the report in their own findings and were therefore aware of the sensitive personal information contained therein. While the Subcommittee may not have included the state investigatory report as an exhibit with the intent of disclosing Plaintiff's social security number, home address and birth date, such specific intent is not required to trigger the protections of the Due Process Clause. It is sufficient if evidence demonstrates that a defendant acted knowingly in disclosing the private information, that is, that the official knew

that the document contained such private information and that the official acted to disclose the document to the general public. Thus, an inadvertent or negligent disclosure does not violate a constitutionally-protected privacy right. What matters is that this disclosure was not negligent, and therefore the Plaintiff's right to informational privacy was implicated.

### 3. Analysis of Individual Defendants

Finally, the court must analyze whether the Plaintiff has produced evidence that any of the moving Defendants[3] disclosed his personal information in violation of the Due Process Clause. The court will first address Defendant Bianco, and then Defendants McCall and Spinner and finally Defendant Mabey.

■ As to Defendant Bianco, the Plaintiffs have presented no evidence that Bianco was involved in the disclosure of the Plaintiff's personal information in the state investigatory report. There is no evidence that Bianco was instrumental in making the OPRA request, had any role in the receipt of the state investigatory report or made copies of the report available to the public. Therefore, summary judgment is appropriate to dismiss Plaintiff's right to privacy claim against Defendant Bianco.

Defendants McCall and Spinner arguably had the most involved role in retrieving the state investigatory report and making it available to the public by attaching it as an exhibit to their Subcommittee report. However, there is an issue with whether McCall and Spinner are entitled to legislative immunity.

■■ Absolute legislative immunity applies to official actions taken within the scope of legitimate legislative activity. *Schlegel v. Koteski,* 307 Fed.Appx. 657 (3d

Cir.2009) (citing *Bogan v. Scott–Harris,* 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998)). The Third Circuit has held that absolute legislative immunity extends to "members of a municipal council acting in a legislative capacity." *Aitchison v. Raffiani,* 708 F.2d 96, 99 (3d Cir.1983). Municipal investigation committees established pursuant to N.J.S.A. 40:48–25 serve a legislative function and are considered legitimate legislative activities. *In re Shain,* 92 N.J. 524, 530, 457 A.2d 828 (1983) ("A concomitant of the power to legislate is the power to investigate for legislative purposes."). Therefore, legislative immunity applies to bar actions against members of municipal investigative committees in their individual capacities for damages pursuant to 42 U.S.C. § 1983.

■ However, legislative immunity does not bar Section 1983 suits against municipal committee members in their official capacities. This is because Section 1983 claims against board members in their official capacities are "in all respects other than name, to be treated as a suit against the entity." *Bass v. Attardi,* 868 F.2d 45, 51 (3d Cir.1989) (citing *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). A township, as a municipal entity, is not entitled to any form of immunity. *Id. See also Aitchison,* 708 F.2d at 100 ("liability against the municipality is not precluded simply because the defendants were found immune in their individual capacities").

■ In this case, Defendants Spinner and McCall attached the unredacted state investigatory report to a public document, thereby disclosing the Plaintiff's home address, social security number and other personal identifiers to the public. Significantly, there are no reasons offered by the

---

**3.** The court notes that Plaintiff's brief limits his argument to Defendants McCall and Spinner. The Plaintiff does not address the merits of his privacy claim against Defendants Bianco or Mabey.

Defendants in their briefing or in the record which justify disclosure of Plaintiff's personal information to the public. Therefore, a rational factfinder could conclude that Defendants McCall and Spinner violated the Plaintiff's substantive due process right to privacy.

However, their actions in attaching the investigatory report to their own Subcommittee Findings was taken in the scope of a legislative function as members of a township investigatory committee. Therefore, Defendants Spinner and McCall are entitled to legislative immunity in their individual capacities with regard to Plaintiff's privacy claim. Summary judgment will be entered in favor of Spinner and McCall in their individual capacities.

 Legislative immunity does not preclude the Plaintiff's Section 1983 claims to proceed against Defendants McCall and Spinner in their official capacities, however. Plaintiff's official capacity claim against Defendants McCall and Spinner for violation of his right to privacy is in all respects a claim against the Township itself, which is also a Defendant in this case. As the Township is not entitled to any immunity, Plaintiff's claims against McCall and Spinner in their official capacity may proceed.

 Finally, there is an issue raised by the facts[4] that Defendant Mabey, the Chief of Police, violated Plaintiff's right to privacy by allegedly disclosing an unredacted copy of the state investigatory report to Defendants McCall and Spinner. Defendants McCall and Spinner claim they received the state investigatory report pursuant to an OPRA request to the State Police Department and the submission of $16 money order. Plaintiff claims Defen-

dant Mabey gave them an unredacted copy of the state investigatory report which Mabey had in his possession once the State Police declined the Township's OPRA request and subpoena.

 Viewing all facts in favor of the Plaintiff as the nonmoving party, the court finds summary judgment is appropriate to dismiss Plaintiff's right to privacy claim against Defendant Mabey. Assuming Defendant Mabey was the source of the unredacted state investigatory report, his disclosure of the report to Defendants McCall and Spinner did not violate Plaintiff's constitutional right to privacy. In particular, Defendants McCall and Spinner were not members of the public, but rather were functioning as governmental officials vested with the authority to investigate the April 16, 2008 incident. The sharing of law enforcement investigative information with other government officials is not prohibited by the constitution, nor should it be. See Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate, 519 F.2d 1335, 1338 (3d Cir.1975) (holding that the sharing of information by a law enforcement authority with other agencies of government having a legitimate law enforcement function does not give rise to a constitutional violation). Here, Defendants McCall and Spinner, as members of the Investigative Subcommittee, were legitimately investigating Plaintiff's involvement in the April 16, 2008 incident and consequently were entitled to have access to the report.

In addition, there is no evidence that Defendant Mabey made any public disclosure of the unredacted state police investigatory report. The public disclosure oc-

4. This issue was not raised by the Plaintiff in his opposition as Plaintiff's brief focused solely on the liability of Defendants McCall and Spinner with regard to Plaintiff's right to privacy claim. However, the Plaintiff implied such an argument from his Statement of Undisputed Material Facts [Docket Item 44-7] and therefore, the court finds it necessary to address it herein.

curred when the unredacted report was attached to the findings of the Investigative Subcommittee. There is no evidence in the record that Defendant Mabey was involved with this decision, authored the report or authorized its disclosure.

 Finally, even assuming Defendant Mabey was wrong in disclosing the unredacted report to Defendants McCall and Spinner, he is entitled to qualified immunity. As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or ... knowingly violate[d] the law," while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions." *Curley v. Klem*, 499 F.3d 199, 206–07 (3d Cir.2007) (internal quotations and citations omitted). The Court must address "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (internal quotations and citations omitted).

The right to prevent intra-governmental dissemination of personal information in the context of a law enforcement investigation is not well established, especially after *NASA, supra.* Defendants McCall and Spinner had a legitimate reason to ask for this information as they were vested with the authority to investigate the April 16, 2008 incident on behalf of the Township. Further, there was no indication at the time Defendant Mabey allegedly disclosed the unredacted report that this report would subsequently be disclosed to the public. Therefore, Defendant Mabey's actions were objectively reasonable under the circumstances and he is entitled to qualified immunity.

In conclusion, Plaintiff's substantive due process claim for violation of his right to informational privacy will be dismissed in its entirety as to Defendant Bianco and Defendant Mabey. Summary judgment will also be granted as to the individual capacity suits against McCall and Spinner. However, summary judgment will be denied as to the official capacity claims against Defendants McCall and Spinner.

 This analysis applies with equal force to the Plaintiff's claim for violation of his right to privacy under the New Jersey State Constitution. It is well established that the right to privacy is broader under the New Jersey Constitution than the federal Constitution. *See Burnett v. County of Bergen*, 198 N.J. 408, 437, 968 A.2d 1151 (2009) (recognizing a reasonable expectation of privacy in personal information such as social security numbers contained in land title records); *State v. McAllister*, 184 N.J. 17, 32–33, 875 A.2d 866 (2005) (finding an individual has a reasonable expectation of privacy in bank records where such a right had not been recognized under the federal Constitution); *State v. Hunt*, 91 N.J. 338, 347, 450 A.2d 952 (1982) (finding a right to privacy in long distance telephone records held by telephone company). Therefore, the Plaintiff's claims against Defendants McCall and Spinner in their official capacities remain viable under the New Jersey Constitution as well.

The Township's liability will be addressed below.

### C. 42 U.S.C. § 1983 *Monell* Claim

Defendant Township argues that summary judgment is appropriate to dismiss the Plaintiff's claim against it for violating the Plaintiff's right to privacy because the Plaintiff has failed to prove an unlawful municipal policy or custom. The Plaintiff argues that summary judgment is inappropriate as the Plaintiff has shown that the policymakers themselves, McCall and Spinner, violated his constitutional rights

by disclosing his home address and social security number.

 It is well-established that municipal liability under § 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). As a consequence, a municipality is liable under § 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion).

 One circumstance in which municipal liability is appropriate "occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 584 (3d Cir.2003). "In order to ascertain if an official has final policymaking authority, and can thus bind the municipality by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, and (2) whether the official's authority to make policy in that area is final and unreviewable." *Hill*, 455 F.3d at 245 (internal citations omitted).

In this case, it is clear that Defendants McCall and Spinner, as members of the Township Committee and the only two members of the Investigative Subcommittee, are policymakers. McCall and Spinner were responsible for conducting the investigation into the Plaintiff's involvement in accessing the Township's comput-er network and their findings were final and unreviewable.

 As discussed above, the Plaintiff has presented sufficient evidence to support a viable claim for violation of his right to privacy against McCall and Spinner because they disclosed his personal identifiers, such as his social security number and home address, to the public by attaching them to the unredacted state investigatory report to their Subcommittee Findings without any justifiable reason. Further, Plaintiff has provided evidence which creates a genuine issue of material fact as to whether Defendants Spinner and McCall failed to supervise or train the Municipal Clerk in making the report available to the public. Defendants McCall and Spinner were aware that the contents of the investigatory report contained confidential information and had an obligation to inform the Municipal Clerk about its sensitive contents in order for the clerk to properly disseminate the report pursuant to the subsequent OPRA requests.

Therefore it is not necessary for Plaintiff to present evidence of an additional unconstitutional policy or custom, where he has sufficiently established that the municipal policymakers themselves violated federal law. *See Natale*, 318 F.3d at 584. Accordingly, the Township's motion for summary judgment will be denied.

**D. Fourteenth Amendment Defamation Claim**

 Finally, all the Defendants move for summary judgment dismissing Plaintiff's constitutional defamation claim. This court has previously explained in its July, 2010 Opinion that "reputation *alone* is not an interest protected by the Due Process Clause," and that a plaintiff must prove "a stigma to his reputation plus deprivation of some additional right or interest" in order to establish a due process

claim for deprivation of a liberty interest in reputation. *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir.2006) (citing *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)) (emphasis in original). Sometimes referred to as the "stigma-plus" test, in the public employment context the "stigma" is the creation and dissemination of a false and defamatory impression and the "plus" is generally termination. *Id.* Where a plaintiff shows "stigma-plus," he is entitled to a name-clearing hearing. *Id.* In order to establish the requisite stigmatizing statement, a plaintiff must show the statements (1) were made publicly and (2) were false. *See id.*

Plaintiff bases his defamation claim on the following allegedly false statements made by Defendants Spinner and McCall: (1) the Plaintiff had provided false statements and lied to law enforcement; (2) the Plaintiff had breached the Township network; and (3) that the Plaintiff was a hacker.

■ As to the first statement, it is undisputed that the Plaintiff did not tell Chief Mabey that he ran a port scan on the computer network when he was being questioned by Chief Mabey about his access to the Township computers on April 16, 2008. This omission during Chief Mabey's interrogation was material and was willfully done by the Plaintiff. Therefore, the statement made by Defendants McCall and Spinner that Plaintiff "willingly lie[d] in an official Police investigation" was not false and cannot serve as a basis for Plaintiff's defamation claim. (Def.'s Ex. 17, Subcommittee Report.)

■ Similarly, statements made by Defendants McCall and Spinner that the Plaintiff had breached the Township's network are not inaccurate. The Plaintiff performed a port scan on the Township's computer network, and while the Plaintiff did not access personal information stored on the network, the Plaintiff still performed a scan that a member of the general public would not be authorized to do. The Plaintiff was not given permission to do this scan from the Township Committee, but rather performed the scan surreptitiously at the request of Deputy Mayor Campbell. Plaintiff tried to conceal his breach of the network by claiming that he had only used the Township's computer to check his own business email. Plaintiff's own false exculpatory story is another reason to believe that he understood the wrongfulness of his conduct on the Township's network. This could be understood as a breach and consequently, the statement that Plaintiff breached the Township's network cannot be considered so false as to be the basis for a defamation claim. Though the Plaintiff did not have the requisite criminal intent necessary for prosecution, as found by the state police investigation, this does not make Plaintiff's conduct any less a breach of the Township's network.

■ Finally, the statement that Plaintiff is a "hacker" is also insufficient to buttress Plaintiff's defamation claim. It is undisputed that the Subcommittee Report does not refer to the Plaintiff as a "hacker." There is no evidence in the record that Defendants McCall or Spinner [5] publicly referred to the Plaintiff as a hacker. Without any evidence in the record that

---

**5.** The Plaintiff does not argue in his brief that Defendants Mabey or Bianco publicly made any defamatory statements. By not responding to the Defendants' moving brief requesting summary judgment dismissing the defamation claim against all Defendants, the court

finds the Plaintiff concedes that there is no evidence of defamatory conduct by Defendants Mabey and Bianco in the record and therefore will summarily dismiss the defamation claims against these defendants.

this statement was publicly made, it cannot serve as a basis for a defamation claim.

Therefore, as the Plaintiff has failed to sustain his burden of proof in showing Defendants Spinner and McCall publicly made false statements against him, no rational jury could find that stigmatizing statements were made, and therefore summary judgment is entered in favor of the moving Defendants on Plaintiff's defamation claim.

## IV. CONCLUSION

For the reasons discussed herein, the court will grant in part and deny in part the Defendants' motion for summary judgment. The court will partially grant the Defendants' motion for summary judgment and dismiss Plaintiff's constitutional right to privacy claim against Defendant Bianco and Defendant Mabey in its entirety. The court will also grant summary judgment and dismiss Plaintiff's right to privacy claim against Defendants McCall and Spinner in their individual capacities. However, the court will not dismiss the Plaintiff's right to privacy claim against Defendants McCall and Spinner in their official capacities.

The court will also deny summary judgment as to Plaintiff's claim against the Township. As the Plaintiff has produced evidence from which a jury could conclude his federal rights were violated by the final action of policymakers, specifically Defendants McCall and Spinner, the court finds the Plaintiff may proceed on his *Monell* claim and need not show additional evidence of a municipal policy or custom.

Finally, the court will grant summary judgment as to Plaintiff's defamation claim. The Plaintiff has failed to sustain his burden of proof to establish that false and defamatory statements were made by the Defendants. Therefore, as no rational jury could conclude that stigmatizing statements were made by the Defendants, summary judgment is appropriate to dismiss this claim.

The accompanying Order will be entered.

## MEMORANDUM OPINION

This matter is before the Court upon the motion of Defendants South Harrison Township, Warren Mabey, Colleen Bianco, James McCall and Gary Spinner ("Defendants") for reconsideration [Docket Item 60] of this Court's order granting in part and denying in part the Defendants' previous motion for summary judgment [Docket Item 58]. The Court finds as follows:

1. The Plaintiff Matthew Warner ("Plaintiff") performed a port scan on the Township of South Harrison's computer network at the request of Deputy Mayor Robert Campbell but without the permission of the Township Committee. This incident resulted in a state police investigation to determine whether the Plaintiff unlawfully breached the Township's computer network. The state police concluded that there was no criminal activity involved in this incident and that the Plaintiff was asked to scan the network and believed he had the proper authority to do so. The matter was then referred back to the Township for any further action. The Township formed a subcommittee comprised of Defendants Spinner and McCall to investigate the incident and subsequently the subcommittee issued its own report and findings. Attached to this report was an unredacted copy of the state police investigation report which included Plaintiff's social security number, home address, date of birth, driver's license number and personal telephone numbers. Defendants Spinner and McCall handed a copy of the report with the incorporated exhibits to the Municipal Clerk. This report contained Plaintiff's unredacted personal information and was later made available to

the public through Open Public Records Act requests.

2. The Plaintiff filed the instant action against the Defendants Township of South Harrison, Jeannine Campbell, Colleen Bianco, Gary Spinner, James McCall and Warren Mabey. In the First Amended Complaint, the Plaintiff alleged Defendants violated his right to privacy under both the Federal and State Constitutions. The Plaintiff also brought a Fourteenth Amendment defamation claim against the Defendants. Lastly, the Plaintiff brought a *Monell* claim for violation of federal rights against the Township of South Harrison and maintained that the municipality failed to train, supervise and/or discipline the individual defendants.

3. Defendants then filed a motion for summary judgment, which this Court granted in part and denied in part. [Docket Item 58.] The court granted Defendants' motion for summary judgment as to the Plaintiff's defamation claim. The court dismissed Plaintiff's constitutional right to privacy claim against Defendant Bianco and Defendant Mabey in its entirety. The court also granted summary judgment and dismissed Plaintiff's right to privacy claim against Defendants McCall and Spinner in their individual capacities. However, the court denied summary judgment as to the Plaintiff's right to privacy claim against Defendants McCall and Spinner in their official capacities. The court also denied summary judgment as to Plaintiff's *Monell* claim against the Township.

4. Specifically, the court concluded that the Plaintiff produced evidence from which a jury could conclude his federal rights were violated by Defendants McCall and Spinner, who were policy makers for the Township. The court found that there was evidence from which a jury could find the disclosure of Plaintiff's personal information in the unredacted police report was not negligent. The record showed that Defendants McCall and Spinner were told numerous times by multiple individuals that the information included in the report was confidential. McCall and Spinner's own investigatory subcommittee report summarized the state police report. Consequently, the court found it was evident McCall and Spinner read the unredacted report and were aware of its sensitive contents. However, Defendants McCall and Spinner failed to properly redact the report prior to attaching it as an exhibit to their public subcommittee findings. Therefore, the court held that a reasonable jury could find that the disclosure by McCall and Spinner was not negligent; thus Plaintiff's right to privacy claim remained viable.

5. Defendants now move for reconsideration and argue that there was not sufficient evidence that McCall and Spinner's disclosure was non-negligent. In particular, the Defendants argue that the court improperly relied upon the Plaintiff's suspicion that Defendants Spinner and McCall could be lying about how they ultimately received a copy of the unredacted police report. The Defendants argue that the court overlooked facts in the record which supported the Defendants' contention that McCall and Spinner received the report from the State Police after submitting a $16 money order. The Defendants argue the court improperly relied on Plaintiff's supposition that Defendant Mabey furnished the report, not the state police, and erroneously held McCall and Spinner's disclosure was not negligent. Therefore, the Defendants maintain reconsideration is proper.

6. The Plaintiff filed opposition to Defendants' reconsideration motion. First, the Plaintiff maintains that this motion is untimely because it was not filed within fourteen (14) days of the court's June 26, 2012 order in compliance with L. Civ. R.

7.1(i). Instead, it was filed twenty-eight (28) days after the court's decision. Therefore, Plaintiff argues the court should deny the motion on timeliness grounds alone. As to the merits, the Plaintiff argues the Defendants misconstrue the court's decision. The Plaintiff maintains that the court's finding that the disclosure of Plaintiff's personal identifiers was not negligent did not depend on how Defendants McCall and Spinner received the unredacted report. Rather, the court's holding relied on the fact that it was clear Defendants McCall and Spinner had read the report, were aware of its sensitive contents and failed to redact it prior to publishing it as an exhibit to their subcommittee findings. Thus, Plaintiff maintains that the Defendants' motion lacks merit and should be denied.

 7. Local Civil Rule 7.1(i) governs the Court's review of Plaintiff's motion for reconsideration. Rule 7.1(i) requires the moving party to set forth the factual matters or controlling legal authorities it believes the Court overlooked when rendering its initial decision. L. Civ. R. 7.1(i). To prevail on a motion for reconsideration, the movant must show:

(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court ... [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

*Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999); *see also Tehan v. Disability Management Services, Inc.,* 111 F.Supp.2d 542, 549 (D.N.J.2000). To prevail under the third prong, the movant must show that "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered." *P. Schoenfeld Asset Management LLC v. Cendant Corp.,* 161 F.Supp.2d 349, 353 (D.N.J.2001) (internal quotations and citations omitted). The standard of review involved in a motion for reconsideration is high and relief is to be granted sparingly. *United States v. Jones,* 158 F.R.D. 309, 314 (D.N.J.1994); *Maldonado v. Lucca,* 636 F.Supp. 621, 629 (D.N.J.1986).

 8. As an initial matter, Defendants' motion for reconsideration is untimely as it was filed outside the fourteen day period prescribed by L. Civ. R. 7.1(i). The Defendants' argument that the twenty-eight day period in Fed.R.Civ.P. 59(e) applies to this motion is unpersuasive. The provisions of Rule 59 are designed to address orders rendering a final judgment, not interlocutory orders partially denying summary judgment. Because no final judgment has been entered in this action pursuant to Rule 54(b), the provisions of Rule 59, and its 28–day time limit, are inapplicable here. *Juzwin v. Amtorg Trading Corp.,* 718 F.Supp. 1233, 1235 (D.N.J.1989).[1] The proper procedural mechanism for reconsideration of this in-

---

**1.** In addition, the cases cited by the Defendants in support of their argument that Rule 59(e) applies to all motions for reconsideration in fact hold that Rule 59(e) only applies to final judgments and not interlocutory orders. *Peterson v. Brooks,* No. 07–2442, 2008 WL 4072700, 2008 U.S. Dist. LEXIS 66904 (E.D.Pa. September 2, 2008) (applying Rule 59(e) to reconsideration of final judgment); *Peterson v. Brennan,* No. 97–3477, 2004 WL 1505253, 2004 U.S. Dist. LEXIS 11860 (E.D.Pa. June 15, 2004) (applying Rule 59(e) to reconsideration of final judgment); *Mainguth v. Packard,* No. 4:05–0256, 2006 WL 1410737, 2006 U.S. Dist. LEXIS 34115 (M.D.Pa. May 23, 2006) (noting that Rule 59 does not govern motion for reconsideration of denial of motion for summary judgment which is an interlocutory order, but ultimately using court's discretion to grant reconsideration). The court was unable to find the final case cited by Defendants, *Clapsad v. Shannon,* 2003 U.S. Dist. LEXIS 22255 (D.N.J.2003), as the citation given is not accurate.

terlocutory order is Local Civil Rule 7.1(i). Motions under L. Civ. R. 7.1(i) must be served and filed within 14 days after the entry of the order, and therefore Defendant's motion was untimely.

9. Notwithstanding the timeliness issue, the Defendants' motion for reconsideration lacks merit. First, the Defendants have not presented evidence which the court overlooked; instead, the Defendants disagree with the court's interpretation of the evidence. See *G–69 v. Degnan,* 748 F.Supp. 274, 275 (D.N.J.1990) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.").

10. Further, the manner in which Defendants McCall and Spinner received the unredacted police report was irrelevant to the court's conclusion that McCall and Spinner's ultimate disclosure was not negligent. Specifically, the court held:

> The Township Committee in this case requested the state investigatory report and were told on multiple occasions that the content of this report was confidential. It is unclear how Defendants Spinner and McCall ultimately obtained the report as the New Jersey State Police refused to disclose it and the deposition testimony of Defendants Spinner and McCall is inconsistent. The inclusion of the state investigatory report as an exhibit to the Subcommittee's report was intentional and deliberate. It is evident that the Subcommittee read and summarized the report in their own findings and were therefore aware of the sensitive personal information contained therein. While the Subcommittee may not have included the state investigatory report as an exhibit with the intent of disclosing Plaintiff's social security number, home address and birth date, such

specific intent is not required to trigger the protections of the Due Process Clause. It is sufficient if evidence demonstrates that a defendant acted knowingly in disclosing the private information, that is, that the official knew that the document contained such private information and that the official acted to disclose the document to the general public. Thus, an inadvertent or negligent disclosure does not violate a constitutionally-protected privacy right. What matters is that this disclosure was not negligent, and therefore the Plaintiff's right to informational privacy was implicated.

*Warner v. Twp. of South Harrison,* No. 09–6095, 885 F.Supp.2d 725, 738–40, 2012 WL 2466573, *10 (D.N.J. June 26, 2012). Indeed, the court granted Defendants' motion for summary judgment as to Chief Warren Mabey even assuming Defendant Mabey had disclosed the unredacted report to McCall and Spinner. In finding that such disclosure would not violate Plaintiff's right to privacy, the court reasoned:

> Assuming Defendant Mabey was the source of the unredacted state investigatory report, his disclosure of the report to Defendants McCall and Spinner did not violate Plaintiff's constitutional right to privacy. In particular, Defendants McCall and Spinner were not members of the public, but rather were functioning as governmental officials vested with the authority to investigate the April 16, 2008 incident. The sharing of law enforcement investigative information with other government officials is not prohibited by the constitution, nor should it be. See *Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate,* 519 F.2d 1335, 1338 (3d Cir.1975) (holding that the sharing of information by a law enforcement authority with other agencies of government having a legitimate

law enforcement function does not give rise to a constitutional violation). Here, Defendants McCall and Spinner, as members of the Investigative Subcommittee, were legitimately investigating Plaintiff's involvement in the April 16, 2008 incident and consequently were entitled to have access to the report.

*Warner,* 885 F.Supp.2d at 741–42, 2012 WL 2466573 at \*12.

Accordingly, Defendants' motion for reconsideration on the basis that the court unduly relied on Plaintiff's supposition that McCall and Spinner received the unredacted report from Defendant Mabey is without merit.

11. For the reasons set forth above, the Plaintiff's motion for reconsideration will be denied. The accompanying Order will be entered.